[Civ. No. 52569. Second Dist., Div. Four. Aug. 14, 1978.]

FRANK TRIBULSKI, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Curtis L. Gemmil, Peter H. Cuttitta and William Harris for Plaintiff and Appellant.

John H. Larson, County Counsel, and Jan A. Plum, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**KINGSLEY, J.**—Plaintiff appeals from an adverse judgment in an action for false imprisonment.[1] We affirm.

---

[1]At the trial, plaintiff sought to recover: (1) For false arrest; (2) for failure to advise of the blood test results; and (3) for undue delay in his release after the case against him was

■ In the light of the jury verdicts, the sole issue on this appeal is whether the county may be held liable for false imprisonment by reason of the failure of the sheriff's department more promptly to advise the deputy district attorney in charge of plaintiff's criminal case of the existence of a favorable blood test. We agree with the trial court that there existed no duty on the sheriff or his deputies to act in a manner other than the one here followed and, therefore, that the county is not liable for any delay in the ultimate release of plaintiff.

The facts, so far as are material to this appeal, are as follows: Plaintiff was stopped, early in the morning of May 2, 1972, while driving on a freeway, because deputy sheriffs observed him driving too slowly and weaving. He refused to take the field sobriety tests for balance and coordination, but did elect to take the blood test provided for in section 13353 of the Vehicle Code. Blood for that test was drawn at Doctor's Hospital prior to his delivery to the police station, where he was booked for drunk driving.

The examination of the blood sample was conducted on May 5, 1972, by a criminologist employed by the sheriff's department. There is no evidence or offer of proof as to how or through whom this report was transmitted to the district attorney. Plaintiff asserted, and the county counsel admitted, that the district attorney received the results on May 18, 1972. Plaintiff was arraigned on the drunk driving complaint on May 2, 1972, prior to the time the blood test results had become available. On that date the case was set for jury trial May 23, and plaintiff was remanded to the custody of the sheriff. On May 23 the public defender was appointed, and the trial continued to June 1, on which date the case was dismissed "due to lack of prosecution."

The original incarceration of plaintiff has been found to be lawful by the jury verdict in this case, and that determination is not attacked on this appeal. His incarceration after the May 2 arraignment was pursuant to orders of the court before which his case was pending and plaintiff cannot, in this proceeding, charge the county or its sheriff with that incarceration. ■ However, an imprisonment originally lawful and court ordered may become actionable if release is delayed beyond lawful limits. (*Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375,

---

dismissed. The trial court refused to allow the second matter to go to the jury; the jury returned verdicts in favor of defendants on the first and third matters. As a result, we have now before us only the second theory.

383-384 [40 Cal.Rptr. 863].) ▮ Based on that situation, plaintiff's theory is, as we understand it, as follows: When the favorable blood test reports were finally made known to the court, it immediately ordered his release; had those results been made known to the court earlier, the order of release would have come earlier;[2] therefore, plaintiff contends, there is liability for not bringing the test results to the attention of the court as soon as they became known.

On the facts as we see them from the record before us, two agencies were involved in the delay. On an earlier appeal,[3] we held that section 821.6 of the Government Code gave immunity to the deputy district attorneys involved for their part of the delay. Plaintiff's theory rests on the contention that the sheriff had a duty to establish some system whereby such favorable blood test results would (a) be brought affirmatively to the direct attention of the district attorney or to the deputy in charge of the case; and (b) be brought to the immediate attention of the arrestee and/or his counsel if any.

We are cited to no authority, and we know of none, that imposes such duty. It would put an impossible burden on law enforcement officers to take such action every time they learn of some piece of evidence that might be favorable to a person under arrest.

Once the district attorney has filed a complaint, it is his responsibility to gather and present such evidence as will convict the guilty or exonerate the innocent. There is no suggestion that anyone in the sheriff's department did anything to suppress or conceal the result of the blood test. Ordinarily, both the defendant and the district attorney will be aware that within a short time after the arrest the results of a chemical test will be available as evidence of guilt or innocence. (See Veh. Code, § 13353.) The law does not impose any duty upon the sheriff to tell the parties and their counsel what shall be done with that evidence.

The judgment is affirmed.

Files, P. J., concurred.

---

[2]In the view that we take of this case, we need not, and do not, determine that an earlier dismissal would necessarily have occurred had the test results been more promptly called to the attention of the court. Plaintiff points to some evidence from which a jury might have found in his favor on that issue.

[3]2d Civ. 44691, filed July 17, 1975.

**JONES, J.,** * Dissenting.—Although I agree with the majority opinion that law enforcement officers are under no duty to notify the prosecutor immediately every time they learn of "some piece of evidence that might be favorable to a person under arrest" the situation presented here is quite another matter. The arrestee in this case chose to submit to a blood test at the time of his arrest on May 2d and a sample of his blood was taken for this purpose within 40 minutes after he was first stopped by the police. Thereafter the sample was transmitted to the criminalist laboratory of the sheriff's office, where it was analyzed on May 5th. The blood alcohol level was found to be .00 and the criminalist accordingly noted his opinion that the arrestee was not under the influence of alcohol at the time the specimen was taken, the only possible conclusion in view of the test results. In addition, although the complaint filed against Tribulski charged him only with driving under the influence of intoxicating liquor, the blood sample was also tested for a barbituric acid derivative, with a negative finding.

Under these circumstances there can be no doubt that the sheriff had notice of a fact sufficient to put him as a reasonable man under the duty to investigate the validity of Tribulski's continued incarceration. (See *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865].) Rather than just being "some piece of evidence that might be favorable to a person under arrest," the criminalist's analysis and necessarily resulting opinion constituted conclusive evidence from the prosecution's own expert that the arrestee was innocent of the charges pending against him. It was as fully exonerating as a laboratory analysis establishing the innocent nature of a suspected substance on a person charged with narcotic possession. Despite this knowledge, however, the sheriff's representatives ignored the obvious and forwarded the test result to the prosecutor in routine fashion, which in this case, according to the record, resulted in the passage of almost two weeks before the evidence was received at the district attorney's office on May 18th.

As the deputy district attorney indicated in his testimony, the blood alcohol test result, when known to him, is very important in his decision whether or not to go to trial on a charge filed before the result is known. In the case of a .00 reading the result is completely absolving, a fact which must have been obvious not only to the district attorney when he finally learned of it, but also to the sheriff and his agents. Such knowledge being chargeable to the sheriff there was then imposed on him the duty to

---

*Assigned by the Chairperson of the Judicial Council.

inform the district attorney promptly so that the latter could take appropriate steps to dismiss the charge.

Requiring the sheriff to notify the district attorney immediately of any completely exonerating evidence pertaining to a person in custody pending trial is a slight burden, not the impossible burden envisioned by the majority opinion. Surely one would rarely expect a .00 result in a chemical test for blood alcohol content of a person charged with driving under the influence of intoxicating liquor. Such a reading should stand out like a red flag, calling for attention and appropriate action by any reasonable jailer who has the test subject in custody. Anything less is intolerable when viewed in the light of the arrestee's overriding interest in avoiding unjustified incarceration. (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d 710, 719.) "The law does not hold the value of a man's freedom in such low regard." (*Whirl* v. *Kern* (5th Cir. 1969) 407 F.2d 781, 792, cert. den. 396 U.S. 901 [24 L.Ed.2d 177, 90 S.Ct. 210].)

"Intentionally to hold another in confinement for being drunk when one knows or should know that he is not drunk, is to confine him unjustifiably." (*Tufte* v. *City of Tacoma* (1967) 71 Wn.2d 866 [431 P.2d 183, 186].) By the same token, continuing to hold a person in confinement for driving under the influence of intoxicating liquor after the sheriff knows or should know that the person was not under that influence is unjustifiable. It must be presumed that the prosecuting attorney, pursuant to his duty to further the administration of justice, would have taken speedy action to obtain a dismissal and discharge order for Tribulski if a sheriff's deputy had made a phone call upon learning of the absolving evidence. Merely putting such evidence into the course of routine transmission, so that the prosecutor first received it almost two weeks later did not comply with the sheriff's legal duty. The majority opinion holding to the contrary serves only to encourage further dehumanization of the jail system in its treatment of prisoners.

The trial court ruling preventing the presentation of evidence to the jury of the sheriff's neglect was prejudicial error, in my opinion, and the judgment should therefore be reversed.