Gary D. SMIDDY, Plaintiff-Appellee,

v.

Dudley D. VARNEY, Sidney J. Nuckles, Raymond D. Inglin, Gaston Herrera, Jesus C. Aguilar, the City of Los Angeles, California, a Chartered City, and the County of Los Angeles, California, Defendants-Appellants.

Nos. 79–3078, 79–3480.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1981.

Decided Aug. 7, 1981.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 21, 1981.

Rehearing Denied Feb. 25, 1982.

Michael Lightfoot, Los Angeles, Cal., for Smiddy; Carla M. Woehrle, Talcott, Vandevelde & Woehrle, Los Angeles, Cal., John H.

Bisbee, Bisbee & Nagan, Macomb, Ill., on brief.

Tom Todd, Kentfield, Cal., for Varney, etc.

Before WALLACE and SNEED, Circuit Judges, and CLAIBORNE *, District Judge.

SNEED, Circuit Judge:

Gary Smiddy was arrested in 1973 and charged with the murder of Linda Miller. After the charge was dropped for insufficient evidence, he brought suit under 42 U.S.C. § 1983 against employees of the Los Angeles Police Department. After trial, the district court entered judgment on a jury verdict awarding him $250,000. The district court added $250,000 in attorney's fees. The appellants, two sergeants and a polygraph examiner, challenge the judgment on numerous grounds. We reject their arguments that the district court should have directed a verdict in their favor and that the jury instructions were improper. But we conclude that the district court erred in refusing to hold that they were not liable for damages incurred after a district attorney, exercising his independent judgment, filed charges. We therefore reverse and remand for a new trial on the issue of damages. On remand, a reconsideration of the amount of the attorney's fees also will be necessary.

## I.

### FACTS AND BACKGROUND

Linda Miller's body was found on Friday morning, October 19, 1973, at approximately 7:30 a. m., in the storage room of a construction site in the Venice area of Los Angeles. She had been strangled. She was last seen alive in public at about 5:00 a. m. Thursday morning, when she left a coffee shop with Gary Smiddy. Smiddy claims they went from the coffee shop to his apartment in separate cars, where they stayed until she left on Thursday afternoon. Smiddy was with friends from about 5:00 p. m. Thursday until Miller's body was discovered.

Defendants Varney and Nuckles, experienced homicide investigators, arrested Smiddy on November 15, 1973. At that time they knew that Miller had last been seen with Smiddy, that she had not reported to her job as a waitress on Thursday evening, and that she was found dead wearing the same clothes she had on when she left the coffee shop. They thought Smiddy might have murdered Miller after leaving the coffee shop at 5:00 a. m. Thursday morning and before workmen arrived at the construction site at 7:30 a. m. that day. A coroner, Dr. Gaston Herrara, said that she could have been dead for 30 hours before her body was discovered. Other information pointing toward Smiddy was that a neighbor had reported that Miller's car was parked near the construction site for a few days before it was found, a sergeant who observed the body at the construction site told Varney and Nuckles that the smell indicated that she had been dead for about a day, and a construction foreman said the body could have been in the storage room Thursday without being discovered. In addition, they had been told that Miller referred to Smiddy as "John" at the coffee shop, which was significant because she had told a number of persons that she was afraid of a man named John with whom she had lived and who she said had threatened her. Also, although the police officers had been told that Smiddy knew they would like to speak with him, he had not contacted them.

The plaintiff produced an array of evidence at trial designed to show that it was unlikely that he killed Miller and that Varney and Nuckles conducted their inquiry negligently. For example, the autopsy revealed that Miller had eaten spaghetti shortly before her death, but no one at the

* Honorable Harry E. Claiborne, Chief Judge of the United States District Court for the District of Nevada, sitting by designation.

coffee shop remembered her eating spaghetti before she left with Smiddy. Her car was parked illegally and received a ticket on Friday morning but none on Thursday, making it unlikely that her car had been parked near the construction site that day. A construction worker told them it was inconceivable that Miller's body was in the storage room all day Thursday. And someone who was shown Miller's picture thought she had been in a bar Thursday night. The plaintiff also argued that Varney and Nuckles should have examined scientific evidence such as blood found in the storage room and seminal fluid found in Miller's vagina more carefully.

Perhaps most persuasively, the plaintiff argued that Varney and Nuckles failed to investigate other suspects adequately, including two former boyfriends named John. Miller had moved out of her apartment because a former boyfriend was harassing her, and she had told a number of friends that the former boyfriend had said that if he could not have her then no one could. The plaintiff presented evidence at trial that a man named John Cook, whom Varney and Nuckles never contacted, made that statement. The plaintiff also argued that the investigation of John Scroggin was deficient. Miller had lived with Scroggin in San Luis Obispo, and he had reportedly beat her and followed her to Los Angeles. Varney and Nuckles did investigate Ronald Varella, who had also lived with Miller and reportedly beat her. Smiddy complained because Varney and Nuckles dropped their investigation of Varella after they arrested him.

The plaintiff also suggested at trial that the police officers should have investigated Steve Dunne, who might have had a date scheduled with Miller on the night before her body was found, and Andy Rawn, with whom Miller had engaged in oral sexual relations at lunchtime on the Wednesday before her death, more carefully. The plaintiff argued that Dunne had lied to the police officers and that Miller may have attempted to blackmail Rawn, warranting further investigation of each.

The day after Varney and Nuckles arrested Smiddy, defendant Inglin administered a polygraph examination of him. Inglin was the president of the California Association of Polygraph Examiners at that time. A deal had been struck such that the police would release Smiddy if he passed the test, but Inglin concluded that Smiddy responded to his questions deceptively. In response to complaints about his examination of Smiddy, Inglin appointed a committee of past presidents of the Association in 1974 to evaluate the examination. The committee concluded that the test was administered deficiently, and the Association subsequently censured Inglin for the way he tested Smiddy.

On November 19, 1973, four days after the arrest, the district attorney filed a criminal complaint charging Smiddy with the murder of Linda Miller. A preliminary hearing was held in municipal court, and Smiddy was bound over to the superior court on December 14. The superior court dismissed the complaint for insufficient evidence on January 23, 1974.

Smiddy filed this section 1983 suit in 1976, alleging that the arrest and incarceration violated his civil rights. Following a lengthy jury trial in 1978, he was awarded $250,000 in damages from Varney, Nuckles and Inglin. The jury found that the coroner, Dr. Herrera, was not liable to Smiddy.[1] The district court awarded the plaintiff

1. Another coroner, Jesus Aguilar, had been dismissed from the case previously. The plaintiff also named the City and County of Los Angeles as defendants in his complaint. Smiddy only sought equitable relief against the municipal defendants. After trial, the court granted plaintiff's motion that they expunge from their files all records of Smiddy's arrest. We note that if this case were brought today the plaintiff would likely seek damages from the municipal defendants. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipal corporations may be liable under section 1983 if injury resulted from a governmental policy or custom); *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (municipal corporations are not protected in section 1983 suits by the immunities of their employees).

$250,000 in attorney's fees under the Civil Rights Attorney's Fees Act of 1976, which amended 42 U.S.C. § 1988 to permit courts to award reasonable attorney's fees to the prevailing party in section 1983 actions. Varney, Nuckles and Inglin appeal.

## II.

### THE MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT

Varney and Nuckles requested a directed verdict in their favor at the close of evidence, arguing that the evidence showed that probable cause existed for Smiddy's arrest as a matter of law. Inglin requested a directed verdict on the theory that his polygraph examination was not a proximate cause of Smiddy's damages. These requests were renewed in motions for judgment notwithstanding the verdict. We hold that the district court correctly denied these motions.

Whether probable cause existed for Smiddy's arrest is a close issue. But in reviewing the denial of a directed verdict in favor of a defendant, we must view the evidence in a light most favorable to the plaintiff. *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 464 (9th Cir. 1977). Giving the plaintiff the benefit of all reasonable inferences that may be drawn from the evidence presented during the course of the twenty-three day trial, sufficient evidence existed to support the jury's conclusion that there was no probable cause for the arrest.

■ It is not possible to summarize concisely all of the evidence presented on this issue since much of the trial was devoted to the issue of whether probable cause existed. But, as indicated above, there was conflicting evidence about what the police officers knew and what other leads they should have pursued. In *Gilker v. Baker*, 576 F.2d 245 (9th Cir. 1978), we stated that if "reasonable persons might reach different conclusions about the facts, the establishment of those facts is for the jury, and the existence of probable cause is likewise for the jury, upon a proper instruction about the

law." *Id.* at 247. The district court was correct under this standard in submitting the issue to the jury, which decided the issue in favor of Smiddy. We will not upset that decision.

■ Nor can we say that there was not sufficient evidence to conclude that Inglin's polygraph examination was a proximate cause of Smiddy's damages. Inglin argues that even if his examination had been conducted properly the results would have been inconclusive. But it is not clear what Varney and Nuckles would have done had Inglin reported that the test was inconclusive. Varney testified that Inglin's conclusion that Smiddy was deceptive was a factor in the decision to hold him. Therefore, sufficient evidence existed to support the jury's conclusion that the polygraph examination was a proximate cause of Smiddy's continued incarceration, and the district court did not err in refusing to direct a verdict in Inglin's favor.

## III.

### THE JURY INSTRUCTIONS

The sergeants and Inglin both challenge the jury instructions. Our standard of review is that we will reverse a judgment because of a mistake in jury instructions only if the error was prejudicial. We look to the entire jury charge, which in this case was quite lengthy, to determine whether the instructions fairly stated the legal principles to be applied by the jury. *Sanderson v. Chapman*, 487 F.2d 264, 267 (9th Cir. 1973); *Nitto Shosen K. K. v. Johnson*, 350 F.2d 399, 400 (9th Cir. 1965). We conclude that the district court's jury instructions pass muster.

■ The court instructed the jury that Inglin could be found liable if he conducted and interpreted the polygraph examination improperly and rendered an incorrect conclusion. The jury was further instructed that Inglin could not be liable if he acted with a reasonable good faith belief that his conduct would not violate Smiddy's constitutional rights. Inglin complains that the instructions did not spell out the meaning

of "improperly." But reading the instructions in their entirety, we conclude that it was clear that the jury was to use the appropriate "reasonably prudent person" test. Inglin also complains that an instruction should have been given that he was to be held to the "special skill and care" standard for experts and professionals. But it is not clear why he would want to be held to this higher standard, especially since he was censured by the California Association of Polygraph Examiners for the way he tested Smiddy.

■ The crucial issue concerning the instructions regarding Varney and Nuckles is whether the jury understood that they might not be liable under section 1983 even if the jury concluded that probable cause for the arrest did not exist. Under *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), police officers have a qualified immunity under section 1983 such that they are shielded from liability if they reasonably believe in good faith that their actions are constitutional. *Id.* at 557, 87 S.Ct. at 1219. Thus, to recover the plaintiff must clear two hurdles: probable cause must be shown not to have existed; the officers must be shown not to have reasonably believed in good faith that probable cause did exist. *See Allen v. McCurry*, 449 U.S. 90, 102 n.18, 101 S.Ct. 411, 419 n.18, 66 L.Ed.2d 308 (1980); *Midwest Growers Cooperative Corp. v. Kirkemo*, 533 F.2d 455, 463 (9th Cir. 1976); *Mark v. Groff*, 521 F.2d 1376, 1379–80 (9th Cir. 1975). It is necessary that police officers be immune when they reasonably believe that probable cause existed, even though it is subsequently concluded that it did not, because they "cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves." *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1349 (2d Cir. 1972) (Lumbard, J., concurring).

■ The instructions in this case first defined probable cause and later stated:

"[A] defendant who acts in good faith and with a reasonable belief that his conduct is constitutional, cannot be found liable under Section 1983." Therefore, although the "two-hurdle" requirement was not as sharply etched in the instructions as it might have been, the issues were fairly put to the jury, which must have concluded both that probable cause was lacking for Smiddy's arrest and that Varney and Nuckles did not reasonably believe in good faith that probable cause existed.

IV.

## DAMAGES INCURRED AFTER THE DISTRICT ATTORNEY FILED THE CHARGE

■ At the close of the trial the defendants moved for a partial directed verdict that they were not liable for any damages suffered after November 19, 1973 because the filing of the criminal complaint by the district attorney insulated them from liability for damages suffered subsequently. They repeated this argument in a motion for judgment notwithstanding the verdict and for a new trial. These motions were denied. They also requested a jury instruction stating that the district attorney bears responsibility for gathering evidence to convict or exonerate an arrested person after the filing of a criminal complaint, and that instruction was denied.

The district court erred. Filing of a criminal complaint immunizes investigating officers such as the appellants from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time. This presumption may be rebutted, however. For example, a showing that the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment will rebut the presumption and remove the immunity. Also the presentation by the officers to the dis-

trict attorney of information known by them to be false will rebut the presumption. These examples are not intended to be exclusive. Perhaps the presumption may be rebutted in other ways.

Authorities from other circuits lend some support for this position. Thus it has been held that the filing of charges under certain circumstances does break the chain of causation between an arrest and prosecution. *See Ames v. United States*, 600 F.2d 183, 185 (8th Cir. 1979); *Dellums v. Powell*, 566 F.2d 167, 192 (D.C.Cir.1977); *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977) (en banc).[2]

■ Thus, we hold that where police officers do not act maliciously or with reckless disregard for the rights of an arrested person, they are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted. This result is just because the other actors who decided to continue to hold Smiddy, the district attorney and the municipal court judge, are absolutely immune from liability under section 1983. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (judges). A police officer's lot already is unfortunate because it is he who often is the only actor in the chain of decisions leading to prosecution who is subject to section 1983 liability. We need not make it more unfortunate by holding the officer liable for damage that is the result of the intervening fault of others in the chain. The existence of the possibility of absolute liability on the part of the municipality or governmental unit further underscores the justice of limiting the liability of the police officers. *See* Comment, *Strict Liability Under Section 1983 for Municipal Deprivations of Federal Rights?: Owen v. City of Independence*, 55 St. John's L.Rev. 153 (1980).

■ The plaintiff argues that even if the filing of the criminal complaint normally insulates police officers from liability for subsequent damages, the defendants have waived the argument in this case because they failed to plead it as an affirmative defense as required by Rule 8 of the Federal Rules of Civil Procedure. We disagree. In California, "Once the district attorney has filed a complaint, it is his responsibility to gather and present such evidence as will convict the guilty or exonerate the innocent." *Tribulski v. County of Los Angeles*, 83 Cal.App.3d 828, 831, 146 Cal.Rptr. 229 (1978). There is a presumption of independence on the part of the district attorney where plaintiff has not presented evidence to challenge that presumption. For example, plaintiff might contend that the prosecutor acted under pressure from the police or relied on the police investigation and arrest when he filed the complaint, instead of making an independent judgment on the existence of probable cause for the arrest. *See Ames, supra*. Where the plaintiff has introduced evidence to rebut the presumption, the burden remains on the defendant to prove that an independent intervening cause cuts off his tort liability. Fed.R.Evid. 301. If for reasons of privilege

---

**2.** In *Rodriguez*, the plaintiff sued arresting officers for a false arrest pursuant to a grand jury indictment. The court held that the action should be dismissed, stating: "[I]f the facts supporting an arrest are put before an intermediate such as a magistrate or grand jury, the intermediate's decision breaks the causal chain ...." 556 F.2d at 1193. In *Dellums*, a false arrest verdict against a police chief was affirmed, but a malicious prosecution verdict was vacated and a new trial was ordered. The court stated: "The law is clear that the chain of causation is broken—thereby defeating tort liability—if the decision made by Attorney Moore [to prosecute] was independent of any pressure or influence exerted by Chief Powell ...." 566 F.2d at 192–93. And in *Ames*, the court, citing *Rodriguez* and *Dellums*, held that: "[A]bsent any specific allegation, such as the presentation of false evidence or the withholding of evidence, the grand jury indictment breaks any chain of causation linking the employees' activities to the institution of criminal proceedings, thus insulating the F. B. I. and Justice Department employees from tort liability." 600 F.2d at 185.

or otherwise the relevant evidence is not available, no presumption will arise.

On remand, then, a new inquiry must be made into the issue of damages. At trial, the plaintiff presented evidence concerning the damage he suffered as a result of his incarceration, including psychological damage and the loss of a prospective job. The jury returned a general verdict that did not specify how the award was calculated. We hold that the defendants are liable for the damage suffered from the time of Smiddy's arrest until the district attorney filed the charges, approximately four days. But they are not liable for Smiddy's damages due to his incarceration from the time of the filing until his release on bail following the preliminary hearing, approximately four weeks, unless the plaintiff rebuts the presumption of independence on the part of the district attorney. Whether the loss of the job opportunity was proximately caused by the arrest by the defendants or the incarceration subsequent to filing of the charges is properly considered in the first instance by the trier of fact. Likewise, determining whether the arrest itself proximately caused any psychological damage must be considered on remand. *See Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355–58 (9th Cir. 1981) (discussion of proximate causation and federal civil rights actions).

## V.

### ATTORNEY'S FEES

[11] The defendants do not challenge the amount of the attorney's fees award, which were designed to compensate the four attorneys who represented Smiddy at their normal rates of $65 to $100 an hour for professional legal work and $25 an hour for law clerks' time. Rather, they appeal the fact that an award was made. We reject their arguments. Nonetheless, we conclude that if damages are substantially reduced on remand the court should reconsider the amount of the attorney's fees award.

Our standard of review for an award of attorney's fees under 42 U.S.C. § 1988 is the abuse of discretion standard. *Sethy v. Alameda County Water District*, 602 F.2d 894, 897 (9th Cir. 1979). Contrary to the defendants' arguments, it is not an abuse of discretion for a district court to award attorney's fees because the plaintiff was awarded damages, *id.*, accepted a contingent fee arrangement, *Buxton v. Patel*, 595 F.2d 1182, 1185 n.3 (9th Cir. 1979), or did not proceed by means of a class action, *id.* The district court must be guided by the factors listed in *Fountila v. Carter*, 571 F.2d 487, 496 (9th Cir. 1978). The district court in this case considered those factors, among which are the amount of damages involved and the results obtained. If on remand the amount of damages is reduced and thus the results obtained are less favorable to the plaintiff, the district court should reconsider the amount of the attorney's fees award in light of all of the *Fountila* factors.

## VI.

### DISPOSITION OF APPEALS

The judgment of liability with respect to each appellant is affirmed, but the amount of the judgment is vacated, and the case is remanded for a new trial on the issue of damages to be conducted in accordance with this opinion. Following that trial a reconsideration of the amount of attorney's fees will be in order.

Affirmed in Part; Judgment Vacated and Remanded.