[No. A025973. First Dist., Div. Three. June 12, 1984.]

DAVID ARTHUR LAIBLE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
CITY AND COUNTY OF SAN FRANCISCO, Real Party in Interest.

Counsel

Roque, Gorelick & Gorelick and Jeff A. Gorelick for Petitioner.

No appearance for Respondent.

George Agnost, City Attorney, Burk E. Delventhal, Diane Elan Wick and Mara E. Rosales, Deputy City Attorneys, for Real Party in Interest.

## Opinion

**WHITE, P. J.**—Plaintiff, once arrested as a suspect in the robbery of a Brinks truck, challenges a ruling on partial summary judgment establishing the City and County of San Francisco's (City and County) immunity defense to a cause of action for false arrest and imprisonment. The City and County's defense depends upon Civil Code section 43.5(a), which states: "There shall be no liability on the part of and no cause of action shall arise against any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if such peace officer in making the arrest acts without malice and in reasonable belief that the person arrested is the one referred to in the warrant." Implicitly, the trial court ruled that petitioner had not raised a factual question concerning the peace officer's malice in making the arrest pursuant to an arrest warrant. We disagree with the court's evaluation of the declarations, and issue a peremptory writ of mandate.

■ Review of the trial court's determination on a motion for partial summary judgment (Code Civ. Proc., § 437c)[1] involves pure matters of law, and proceeds in one or more of three consecutive steps: (1) Analyze the pleadings; (2) examine the moving party's showing, and (3) examine the responding party's showing in opposition. (See *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].)

---

[1]The 1983 amendment to Code of Civil Procedure section 437c specified that when the trial court enters any order other than one granting "summary judgment," a party may petition an appropriate reviewing court for a peremptory writ. (Stats. 1983, ch. 490, § 1.) The new statute merely codifies decisional law permitting an aggrieved party to petition for a writ to reverse the denial of summary judgment (*Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 265-266 [83 Cal.Rptr. 237]) or the granting of partial summary judgment (*Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553, 557-558 [145 Cal.Rptr. 657]). It has not changed the standards employed by the appellate courts in deciding whether to entertain the writ on its merits. Applying those standards, we have concluded that this case is appropriate for review by writ.

## 1. *The Pleadings*

Partial summary judgment was warranted if petitioner failed to allege the necessary elements for false imprisonment and arrest. The first cause of action in petitioner's complaint alleged that petitioner was maliciously and falsely arrested and imprisoned by defendants, who did not have reasonable cause to believe that he had committed robbery.

■ The City and County argues, confusingly, that the cause of action is not sufficiently pleaded because it does not allege arrest under a warrant or that the warrant was unlawful. However, petitioner's theory is not that the warrant was facially invalid, but that the arresting officer, Inspector Paul Ryan, acted with malice both in obtaining the arrest warrant and in executing it. Under the case law (see *McKay* v. *County of San Diego* (1980) 111 Cal.App.3d 251 [168 Cal.Rptr. 442]) this is a viable theory of false imprisonment and arrest, and, if true, could defeat the claim of immunity. Thus, the complaint sufficiently pleaded the cause of action and sufficiently raised the critical question of malice.

## 2. *The Moving Party's Showing*

In order to analyze the City and County's showing in support of partial summary judgment and petitioner's showing in opposition, it is necessary first to consider the law on immunity from false imprisonment. *McKay* v. *County of San Diego, supra,* 111 Cal.App.3d 251, the leading case, provides gloss on Civil Code section 43.5(a). There, the complaint alleged that an investigator for the district attorney agreed with another person to fabricate a false document and to submit it to the court in order to obtain an arrest warrant for plaintiff's arrest on false charges. The defendant argued that only an action for malicious prosecution could be brought because the defendant used the process of the court (leading to complete immunity because Gov. Code, § 821.6 immunizes public employees from malicious prosecution suit). Without describing the pleaded facts, the *McKay* court announced its disagreement with defendant, finding that the "Orwellian scenario described in the pleadings established malice 'in spades.'" (*McKay, supra,* at p. 255.) The court explained that when both arrest and initiation of a malicious prosecution are performed by the same person, the malicious arrest is a separate action not covered by the same immunity.

In a later decision, the *McKay* court explained that a defendant falsely arrested, imprisoned, and prosecuted may obtain damages for the period from arrest until the "lawful process begins." (*Jackson* v. *City of San Diego* (1981) 121 Cal.App.3d 579 [175 Cal.Rptr. 395].) In *Jackson,* the lawful process began with a grand jury indictment. Here, however, the prosecutor

took the matter to a magistrate rather than a grand jury. The "lawful process" initiated by filing an information never began because the magistrate discharged petitioner and the prosecution did not refile the charges.

■ As moving party, the City and County was required to present evidence sufficient to prove a complete defense. Under Civil Code section 43.5(a), arrest with a facially valid warrant and without malice would constitute such a defense. The following evidence, presented by the City and County, met its burden.

The City and County submitted a copy of the arrest warrant and of the police reports supporting its issuance. It also presented the declaration of Inspector Ryan. He explained that on September 7, 1979, at approximately 10:30 a.m., he received a report of a robbery of a Brinks truck at a branch of the Bank of America in San Francisco. Between September 7 and September 14, 1979, he investigated the robbery in accordance with standard procedures and to the best of his ability. Based upon his investigation, including an immediate, positive identification made by the victim, he reached the conclusion that there was probable cause to believe petitioner had participated in the robbery. As a result, he went to Assistant District Attorney Susan Eto and discussed his investigation. She agreed that there was probable cause to arrest and she obtained an arrest warrant based upon his information. He personally arrested petitioner on September 14, 1979, pursuant to the warrant. From the time he reached his conclusion until the date of the preliminary examination on October 31, 1979, he believed that petitioner had participated in the robbery. He described his belief as an "honest, good-faith" belief and stated that at no time did he have any "personal wish to vex, annoy, or oppress" petitioner. He had no intent to injure petitioner, nor any improper purpose in seeking the warrant. At no time during the investigation did he ever feel malice or ill will toward petitioner.

The City and County presented other evidence in support of its motion for summary adjudication. Even without consideration of that additional evidence, it is clear that the City and County made a sufficient showing for a ruling that the conditions for immunity under Civil Code section 43.5(a) existed. However, in order to place petitioner's showing in opposition below in context, the rest of the City and County's evidence will be summarized. It consisted primarily of excerpts from the deposition of Inspector Paul Ryan, where he gave the following description of his investigation:

At 9:30 a.m. on Friday, September 7, 1979, a Brinks truck was robbed on Lombard Street in San Francisco. Two suspects were described by witnesses. One was a white male, approximately 30 years old, 6-foot, 190 pounds, blond hair, medium-dark blond full mustache, gray work clothes.

The other suspect was a white male between 30 and 32, 5 feet 7 inches, 160 pounds, dark medium length hair, full black mustache. A witness furnished the police with the license number of the getaway car.

Inspector Ryan first checked on the license plate and determined that the car had been stolen in Sunnyvale. A report from the Sunnyvale or Mountain View Police Department described the suspect as a male, 25 to 27 years old, 6-foot 2, 190 to 200 pounds, dark brown hair. Inspector Ryan considered that description to be similar to the suspect in the San Francisco robbery.

On September 9, 1979, Inspector Ryan received a call from a security man for Smith's Department Store in Oakland. The caller was a retired Oakland Police Department detective. He told Inspector Ryan that two white men had been in the store with a large number of hundred dollar bills, buying a large amount of clothing.

Next, Inspector Ryan called Scott's Seafood Bar and Grill, the restaurant whose proceeds had been stolen in transit to the bank. He learned from the restaurant that a large amount of cash had been taken, including two $100 bills.

The next morning, September 10, 1979, Inspector Ryan went to Smith's where he learned from the salesman that he had sold $1,800 and $1,200 worth of clothing to the two men on Saturday, September 8, in the early afternoon. He learned the names of the two men from the sales slips.

Using the two names, Inspector Ryan learned that one had no criminal record and that petitioner had been arrested for drunk driving in Oakland. He picked up a group of photographs from the Oakland Police Department, including petitioner's photograph. He showed the "mug shots" to one witness, a Mr. Bodine, who was unable to identify petitioner. He then showed the photographs to the Brinks guard, who made an immediate positive identification of petitioner.

The City and County submitted the declaration of Assistant District Attorney Susan Eto, who stated that after reviewing the investigation presented by Inspector Ryan she honestly and strongly believed that petitioner had participated in the Brinks truck robbery. As a result of her belief, she sought and obtained an arrest warrant. After the complaint was filed, further information supported her belief he should be prosecuted, including petition-

er's unfavorable polygraph examination, the fact that petitioner did not provide the district attorney with names of alibi witnesses, and the fact that the weekend after petitioner's arrest a burglary occurred at his place of business, preventing verification of cash disbursements to him during the period when the robbery took place.

### 3. *The Showing in Opposition*

The City and County's documents described a routine police investigation. They revealed little, if any, ground for criticizing Inspector Ryan. Without a showing in opposition by petitioner, the partial summary judgment ruling would clearly have been correct. However, petitioner's showing painted a somewhat different picture.

Petitioner sought to show a triable issue as to Inspector Ryan's alleged malice in obtaining and executing the arrest warrant. ▆ In determining whether petitioner succeeded, the City and County's evidence should be strictly construed and petitioner's construed liberally. (*LaRosa* v. *Superior Court, supra,* 122 Cal.App.3d 741, 745.)

Some of petitioner's declarations did not directly address the question of malice. The pertinent declarations are those by petitioner, his attorney for the criminal matter, and his present attorney. Petitioner's declaration stated that on September 8, 1979, he and his boss at the M & L Trucking Company had both received bonuses of $1,500 with which they were to purchase new wardrobes to improve their business image. They cashed the checks and spent several hours buying clothing at Smith's. They paid in cash. Shortly thereafter he was arrested and accused of a Brinks holdup on September 7, 1979, in San Francisco. He immediately denied involvement and, in terror, told Inspector Ryan his entire life story including a full account of his whereabouts on September 7, 1979. Inspector Ryan told him he was lying and had been positively identified. He was told the money he had spent at Smith's had been tied to the robbery. Petitioner gave Ryan the names of his employer and fellow employees and begged him to confirm his story with them. Ryan repeated that petitioner was lying and threatened to book him. Inspector Ryan first offered him a chance to take a lie detector test. Petitioner agreed, but remained terrified throughout the test. Afterward he was told he had been lying and was asked to confess. Petitioner insisted he was innocent and asked Ryan to contact the potential witnesses to his whereabouts. Ryan refused, saying petitioner was guilty and was caught redhanded, and that Ryan was going to make the charge stick. Ryan seemed rigidly committed to disregarding any of the evidence petitioner told him

he could produce. Petitioner concluded, from Inspector Ryan's actions, manner and demeanor, that for some reason entirely unknown to petitioner, Inspector Ryan was personally dedicated to seeing him prosecuted for the crime and had no interest in the truth.

Marcus R. Peppard, who represented petitioner in the criminal proceedings, submitted a declaration stating that after petitioner's arraignment on September 18, 1979, he went to Ms. Susan Eto and advised her that there were numerous witnesses who could confirm that petitioner was not involved in the robbery. She referred him to Inspector Ryan. He tried to contact him, but his call was not returned. He made other attempts to provide Inspector Ryan with exculpatory evidence, but none of his attempts to contact Ryan were successful. His contacts with the case after arraignment led him to believe that Ryan deliberately refused to investigate any exculpatory evidence throughout the case.

The declaration of petitioner's present attorney referred the trial court to several depositions taken in preparing the civil case. The most pertinent is the deposition of Inspector Ryan. By furnishing a full transcript, petitioner filled in some of the gaps left by the City and County's use of excerpts: On the morning of the robbery, Inspector Ryan asked both the guard, Robert Kerns, and witness Murray Bodine, a bank employee who had viewed the events through a bank window, to examine mug shots at the police station. Mr. Bodine could not positively identify anyone, but picked a few as similar to the robbers. Mr. Kerns did not come to the police station. On September 11, 1979, before obtaining the arrest warrant, Inspector Ryan was given a breakdown of the denominations stolen in the robbery. A total of over $1,900 was taken, but only two $100 bills were included. When he talked to the Smith's security guard on September 10, he learned that the money spent there was in Bank of America straps and consisted of sixteen $100 bills and some smaller bills. (Inspector Ryan testified that the difference in the form of money did not disturb him, as he could not account for the criminal mind.)

After obtaining petitioner's name from the security guard and checking his criminal record, Inspector Ryan asked the Concord Police Department to check around petitioner's house for the stolen getaway car. It was not found. (It later turned up in San Francisco.) The "mug shot" of petitioner was taken in July of 1976, three years before the robbery. Inspector Ryan made no attempt to see if petitioner's mug shot accurately represented his present appearance.

On the afternoon of the day he had obtained the arrest warrant, Inspector Ryan went to Mountain View to show the mug shots to the car salesman.

Although he had taken the thief for a test drive and been abandoned by him on the freeway, the salesman was unable to make an identification.

Inspector Ryan did not interview petitioner's coworkers because he felt they would not answer his questions. When he presented his reports in support of issuance of an arrest warrant, Inspector Ryan did not inform the magistrate that only two $100 bills were taken during the robbery, while sixteen, in a Bank of America wrapper, were spent at Smith's. He did not tell the magistrate that a three-year-old photo had been used in the photo spread which led to identification by the victim. He also did not tell the magistrate that Mr. Bodine had been unable to identify petitioner from the photo "lineup." He could not recall whether he had informed Ms. Eto, the assistant district attorney, of the age of the photo or the discrepancy in the $100 bills.

At the preliminary examination, Mr. Kerns, the Brinks guard, testified that petitioner resembled one of the robbers, but that he could not positively identify him "because he [the robber] had a mustache" and was wearing work clothing. The car salesman was unable to see anyone in court who resembled the person who took the car from him. The rest of the witnesses were called by the defendant to show the discrepancy in the money and to corroborate petitioner's explanation of his whereabouts on the day of the robbery and the source of the money he used at Smith's. The magistrate discharged petitioner for lack of evidence.

Petitioner argues that the evidence he presented revealed a factual dispute concerning the material fact of Officer Ryan's malice, or lack thereof. The trial court did not fully explain its ruling. However, it did state that it had discretion to reject Inspector Ryan's declaration concerning his state of mind. This apparently was a reference to Code of Civil Procedure section 437c, subdivision (e): "If a party is otherwise entitled to summary judgment pursuant to the provisions of this section, summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment, except that summary judgment may be denied in the discretion of the court, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to such fact; or where a material fact is an individual's state of mind, or lack thereof, and such fact is sought to be established solely by the individual's affirmation thereof." The court explained its ruling: "I am satisfied that Section 43.5(a) does apply here. I recognize that I do have discretion to reject the declaration as to the officer's state of mind, and certainly I look at it with some skepticism to insure that the discretion shouldn't be exercised. But we are not dealing here with a situation where

there is nothing more than the officer's broad conclusionary statement, and in reading this in the context of all the other facts that are presented with specificity, I don't have any reason to think that that discretion should be exercised."

The trial court certainly was within its discretion in not rejecting Inspector Ryan's declaration. However, it appears to have lost sight of the next step in the analysis—determining whether petitioner had raised an issue of fact concerning Inspector Ryan's professed good intentions. Instead of identifying factual issues, the trial court resolved an issue of fact in real party's favor.

The City and County argue that an issue of fact concerning malice was not presented by petitioner because he failed to show the kind of deliberate falsification alleged in *McKay*. But the malice alleged in *McKay*, described as malice "in spades," is not the only form of malice. Withholding exculpatory evidence from the magistrate may not be malice in spades, but if deliberate or with reckless disregard of the plaintiff's liberty interests it may nonetheless be malicious.

█ Malice may be proved by circumstantial evidence, and is defined as "that attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose. It does not necessarily require that the defendant be angry or vindictive or bear any actual hostility or ill will toward the plaintiff." (BAJI No. 6.94.) █ Absent a declaration of malice by Inspector Ryan, petitioner could prove malice only by presenting circumstantial evidence. He sought to do so here by presenting evidence that Inspector Ryan possessed significant exculpatory evidence (the discrepancy in $100 bills, the car salesman's failure to identify, the age of the mug shot, the failure of Mr. Bodine to identify) which he failed to investigate further and failed to present to the magistrate when seeking an arrest warrant.

Clearly, presentation of falsified documents is stronger evidence of malice than is withholding of exculpatory evidence, because innocent reasons for withholding evidence can more easily be imagined. But where, as asserted here, significant exculpatory evidence has been withheld, an inference of malice may reasonably be drawn. It is for the trier of fact, not the law and motion court, to weigh the available inferences against Inspector Ryan's profession of pure motives.

Let a peremptory writ of mandate issue compelling the San Francisco Superior Court to vacate its ruling on partial summary judgment and to enter a new order denying the City and County's motion.

Scott, J., and Barry-Deal, J., concurred.