[No. D007941. Fourth Dist., Div. One. Jan. 30, 1990.]

PHILIP H. HAMILTON et al., Plaintiffs and Respondents, v.
CITY OF SAN DIEGO et al., Defendants and Appellants.

## COUNSEL

John W. Witt, City Attorney, Ronald L. Johnson, Assistant City Attorney, Eugene P. Gordon and Leslie J. Girard, Deputy City Attorneys, for Defendants and Appellants.

Engen & Kirkpatrick and Theodora Poloynis-Engen for Plaintiffs and Respondents.

## OPINION

**BENKE, J.**—Appellant City of San Diego (City) appeals from a jury verdict for respondents Philip H. Hamilton and Mercedes T. Hamilton, finding the City liable for false arrest. On appeal the City contends the trial court should have granted its motion for a nonsuit. Because we agree, we do not address the City's contentions the trial court also erred in admitting evidence, instructing the jury and amending the judgment nunc pro tunc.

### FACTS

#### A. *Plaintiffs' Version*

According to the plaintiffs' testimony, on November 23, 1983, plaintiff Mercedes Hamilton took the train from Los Angeles to San Diego. She was met at the San Diego station by her husband, plaintiff Philip Hamilton,

sometime between 10:30 and 11 p.m. The Hamiltons walked across the street to the San Diego Steak House restaurant. They ordered sandwiches. Unfortunately the meat in Philip Hamilton's sandwich was too tough to eat. After the meat was replaced by yet another inedible piece, Philip Hamilton informed the waitress, defendant Herminia Array,[1] that he was not going to pay for the sandwich. Mercedes Hamilton then deducted the price of the uneaten sandwich from the cost of the meal and left money on the table. According to Mercedes Hamilton she made a notation on the back of the check indicating the amount of the deduction. The Hamiltons said good-night to Mrs. Array, left the restaurant, crossed the street and drove off.

B. *"Victim's" Version*

Mrs. Array told the jury a different story. She claimed that after the Hamiltons had come into the restaurant, they waited for 10 or 15 minutes until all the other patrons had left the restaurant and then walked up to the counter. According to Mrs. Array, Philip Hamilton had his hand in his pocket and indicated he had a concealed weapon. He demanded money. Mrs. Array claimed she gave Philip Hamilton two $5 bills,[2] one $10 bill and one $20 bill. After the Hamiltons left the restaurant, Mrs. Array telephoned 911 and told the police she had been robbed. She gave them a description of the suspects and the license plate of their car.

C. *Detention, Booking and Release*

A short time after Mrs. Array's call, the Hamiltons were pulled over by San Diego Police Officers Ruopp and Ewain. The Hamiltons were ordered from their car by loudspeaker and were separated. Mrs. Array was driven to the vehicle stop where she identified the Hamiltons as the people who had robbed her. She was then returned to the restaurant by the police. The Hamiltons were handcuffed and taken to the San Diego Police Department headquarters.

At police headquarters defendant Officer Frank Martinez, a robbery detective, gave the Hamiltons their *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) warnings and interviewed them. Philip Hamilton told Officer Martinez about his dispute with Mrs. Array over the sandwich. In a separate interview Mercedes Hamilton offered an almost identical account.[3] Following their interviews

---

[1] Herminia Array was in fact the owner of the restaurant, along with her husband, defendant Buen Vallejo Array.

[2] When the Hamiltons were later apprehended by police they did not have any $5 bills in their possession.

[3] The only discrepancy in the Hamiltons' statements was over which of them had left the money on the table.

the Hamiltons were booked and remanded to the custody of the sheriff's department.

Later the same evening, Officer Martinez conducted a 20-minute interview of Mrs. Array at the restaurant. When he asked her about the Hamiltons' check, she stated that she threw her checks out every day, but that in any event because the Hamiltons had never eaten at her restaurant, no check for them existed. Officer Martinez asked her where her trash was kept but did not attempt to search the trash that evening.

At trial the Hamiltons presented evidence that other patrons of the Arrays' restaurant had refused to pay for meals they had eaten and that Mrs. Array had previously called the police who had been unable or unwilling to make the patrons pay. At the time Officer Martinez interviewed Mrs. Array, he was not aware of the prior complaints she had made and found her to be a credible witness.

Mercedes Hamilton was bailed out of jail at approximately 5 a.m. on the morning following her arrest; Philip Hamilton was released at approximately noon the same day.

Two days after the Hamiltons' arrest, Officer Martinez returned to the restaurant to search the trash for the check but he did not find it.

The deputy district attorney initially assigned to the Hamiltons' case decided not to file criminal charges against them. A supervisor in the district attorney's office later filed charges against Philip Hamilton, but these charges were subsequently dismissed.

## PROCEEDINGS BELOW

On June 28, 1989, the Hamiltons filed a lawsuit against the Arrays, the City of San Diego and Officers Martinez and Ruopp. The Hamiltons alleged claims for false arrest and false imprisonment, intentional infliction of emotional distress, negligent employment, malicious prosecution, slander and loss of consortium. The City and its police officers answered, denying the material allegations of the complaint and asserting as affirmative defenses the immunity set forth in Government Code section 800 et seq.

At the close of the Hamiltons' case at trial, the City and Officer Martinez[4] moved for a nonsuit. Their motion was denied. Following presentation of the defendants' case, the City and Officer Martinez moved for a directed

---

[4] Following his death, Officer Ruopp was dismissed as a defendant.

verdict. Their motion was granted as to all claims against them except the claims for false arrest and false imprisonment.[5]

The jury found the City liable for false arrest and further found the Hamiltons had suffered $56,140 in compensatory damages.[6]

Following entry of judgment the City and Officer Martinez filed a timely notice of appeal.

DISCUSSION

■ The Code of Civil Procedure section 581c permits the court to grant a nonsuit in a jury trial. This motion is the equivalent of a demurrer to evidence or motion for a directed verdict. (*Darr* v. *Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 [157 Cal.Rptr. 90].) A motion for nonsuit may be granted only when the court, disregarding all conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn from that evidence, determines that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff. (*Campbell* v. *Security Pac. Nat. Bank* (1976) 62 Cal.App.3d 379 [133 Cal.Rptr. 77]; see also *Hale* v. *Venuto* (1982) 137 Cal.App.3d 910 [187 Cal.Rptr. 357].)

■ In its motion for nonsuit on the false arrest claims, the City relied upon Penal Code sections 847 and 836, subdivision 3. Penal Code section 847 provides in part that "no cause of action shall arise against any peace officer, acting within the scope of his authority, for false arrest or false imprisonment arising out of any arrest when: [¶](a) Such arrest was lawful. . . ." Under Penal Code section 836, subdivision 3, a warrantless arrest is lawful whenever a peace officer has "reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." In the trial court the City and Martinez argued that Mrs. Array's report of a robbery and her identification of the Hamiltons established reasonable cause to believe the Hamiltons had committed a felony. Given reasonable cause to arrest, the City and Martinez maintained they were immune under Penal Code section 847.

On appeal the Hamiltons do not argue their detention by Officers Ruopp and Ewain and their transportation to San Diego police headquarters was

---

[5] The Hamiltons have not sought review of the order granting the City and Martinez a partial directed verdict.

[6] The jury found Mrs. Array liable for false arrest, intentional infliction of emotional distress, negligence, malicious prosecution and slander. In addition to the $56,140 in compensatory damages, the jury assessed $76,000 in punitive damages against Mrs. Array. Mrs. Array did not file a notice of appeal.

actionable. Rather, as they did in opposing the City's motions for nonsuit and directed verdict, the Hamiltons argue Officer Martinez's decision to "book" them and remand them to the custody of the sheriff required a reasonable investigation of the crime on Martinez's part. We disagree with the Hamiltons' analysis of the facts and the conclusions they would draw from applicable case law.

In our view once probable cause for the Hamiltons' arrest existed, any nonfeasance Officer Martinez may have been guilty of in investigating the crime did not alter the protection provided by Penal Code section 847. Because we find there was probable cause to arrest the Hamiltons and because at best the record here merely suggests steps Martinez might have taken in investigating the alleged crime, we find the trial court erred in denying the City and Martinez's motion for a nonsuit of the Hamiltons' false arrest claims.

### A. *Probable Cause*

■ Where the facts are not in conflict, the issue of probable cause is a question of law. (*Giannis* v. *City and County of San Francisco* (1978) 78 Cal.App.3d 219, 225 [144 Cal.Rptr. 145]; *People* v. *Tyler* (1961) 193 Cal.App.2d 728, 735 [14 Cal.Rptr. 610].) The existence of probable cause depends upon facts known by the arresting officer at the time of the arrest. (*People* v. *Miller* (1972) 7 Cal.3d. 219, 225 [101 Cal.Rptr. 860, 496 P.2d 1228]; *People* v. *Hatcher* (1969) 2 Cal.App.3d 71, 75-76 [82 Cal.Rptr. 323].) "Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] Probable cause may exist even though there may be some room for doubt. [Citations.] . . . . The test in such a case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial." (*People* v. *Fischer* (1957) 49 Cal.2d 442, 446 [317 P.2d 967].) Moreover, "information from a citizen who purports to be the victim of a robbery or an assault has been held sufficient even though his reliability has not been previously tested. [Citations.] [She] . . . is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct." (*People* v. *Hogan* (1969) 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868].)

■ Here there is no conflict in the record with respect to the information available to Officers Ewain and Ruopp at the time they stopped, handcuffed and transported the Hamiltons to police headquarters. The officers had received a report of a robbery and the purported victim had identified the Hamiltons as the robbers. On this record we have no difficulty in

concluding Officers Ewain and Ruopp had probable cause to arrest the Hamiltons for robbery: the police had evidence a crime had been committed and that the Hamiltons were the likely perpetrators.

## B. *Martinez's Investigation*

The Hamiltons argue Officer Martinez nonetheless had an obligation to investigate Mrs. Array's charges before he "booked" them and sent them to jail. The significance of the Hamiltons' "booking" and commitment to jail escapes us. Penal Code section 7, subdivision 21, states: "To 'book' signifies the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts *following* an arrest." (Italics added.) Booking is a ministerial function and is not part of the arrest process. (*People* v. *Superior Court* (1973) 35 Cal.App.3d 1, 6 [110 Cal.Rptr. 504]; *People* v. *Duke* (1969) 276 Cal.App.2d 630, 634 [81 Cal.Rptr. 69].) Where, as here, probable cause to arrest has been established we are not aware of any authority which suggests police officers must conduct some additional investigation before incarcerating a suspect. Rather, by their terms Penal Code sections 847 and 836 relieve peace officers of liability so long as reasonable cause for arrest has been established. No other condition is placed upon the statutory immunity.

The cases the Hamiltons rely upon to establish an additional duty to investigate are unpersuasive. In *Dawkins* v. *City of Los Angeles* (1978) 22 Cal.3d 126, 135 [148 Cal.Rptr. 857, 583 P.2d 711], the court pointed out a *detention* could be justified by circumstances falling short of the probable cause needed for an *arrest.* We of course have no quarrel with this statement of law. However, the distinction between a detention and an arrest is of no moment in this case. Since probable cause to arrest existed at the time the Hamiltons were transported to police headquarters, the police, including Officer Martinez, could either arrest the Hamiltons or impose some lesser restraint on their liberty.

In *Giannis* v. *City and County of San Francisco, supra*, 78 Cal.App.3d at page 224, the plaintiff argued that in determining the validity of his arrest for robbery the trial court should have considered information which an independent investigation by another officer had disclosed. The court rejected this suggestion: "[W]e conclude that the conduct of the investigators and the knowledge which may have been possessed by anyone besides the arresting officers is irrelevant." (*Ibid.*) Although the court implied that information from such collateral sources would be relevant where a plaintiff has pled negligent investigation, the court's dicta hardly establishes the exis-

tence of such a cause of action, especially in cases where, as here, probable cause for the arrest has been established.

In *Walton v. Will* (1944) 66 Cal.App.2d 509 [152 P.2d 639], a police officer executed an arrest warrant on the wrong person. The court held there was a duty to reasonably ascertain that the person arrested was the one against whom the warrant was issued. Plainly this holding does not establish a duty of further investigation once probable cause has been established and the correct suspect apprehended.

*Laible v. Superior Court* (1984) 157 Cal.App.3d 44 [203 Cal.Rptr. 513], concerned an arrest made pursuant to a warrant and the malice necessary to overcome the immunity of Civil Code section 43.5, subdivision (a). The court held that withholding exculpatory evidence from a magistrate may be a form of malice and therefore summary judgment should not have been granted. Here there are no facts in the record which show Officer Martinez was withholding exculpatory evidence from anyone. Indeed since the plaintiffs contend it was Martinez's decision to book them, which is critical to their case, it is difficult to understand how the concealment theory discussed in *Laible* can be used against him. Martinez certainly cannot be held liable for concealing information from himself.

The Hamiltons also rely upon the holding in *Malley v. Briggs* (1986) 475 U.S. 335 [89 L.Ed.2d 271, 106 S.Ct. 1092]. In that case the United States Supreme Court held that an officer had only qualified immunity in seeking an arrest warrant. The court found that an officer would be liable under 42 United States Code section 1983 if no reasonably competent officer would have believed probable cause for arrest existed. (*Id.* at pp. 340-341 [89 L.Ed.2d at p. 278, 106 S.Ct. at p. 1096].) We, however, have found that probable cause to arrest the Hamiltons existed. Thus Officer Martinez fulfilled any duty imposed upon him by *Malley.*

██ In sum, in light of Penal Code sections 847 and 836, subdivision 3, we find no duty of further investigation once probable cause has been established.[7] ██ Accordingly any liability arising out of Officer Martinez's conduct must be based upon more than mere nonfeasance.[8] (See *Davidson v. City of Westminster* (1982) 32 Cal.3d 197,

---

[7] Police officers do have affirmative duties. They must, without unnecessary delay, take the arrested person before a committing magistrate to be charged with the offense and have bail set as any unnecessary delay may amount to false imprisonment. (*Vernon v. Plumas Lumber Co.* (1925) 71 Cal.App. 112, 117 [234 P. 869].) There is also an affirmative duty placed on the district attorney. Once he or she has filed a complaint, it is his or her responsibility to gather and present such evidence as will both convict the guilty or exonerate the innocent. (*Tribulski v. County of Los Angeles* (1978) 83 Cal.App.3d 828, 831 [146 Cal.Rptr. 229].)

[8] Generally, one owes no affirmative duty to act for the benefit of another unless "a special relation exists between the actor and the other which gives to the other a right to protection." (Rest.2d Torts, § 315; *Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr.

202 [185 Cal.Rptr. 252, 649 P.2d 894].) The Hamiltons, however, did not establish any affirmative misconduct on Officer Martinez's part. Rather they argue he erred in failing to verify their version of events. In particular they criticize his failure to discover and preserve the restaurant check which they believe would have exonerated them. Such a lack of diligence, while unfortunate in light of the eventual outcome of events, is not affirmative misconduct which gives rise to liability.

## CONCLUSION

Because we have concluded the Hamiltons' arrest was supported by probable cause and there was no further duty of investigation required of Officer Martinez, the City and Martinez's motion for nonsuit on the false arrest claims should have been granted. Thus we need not consider the remaining issues raised by the City and Martinez in their appeal.

Judgment reversed with instructions to enter judgment in favor of appellants City and Martinez. Appellants to recover their costs on appeal.

Kremer, P. J., and Huffman, J., concurred.

---

233, 664 P.2d 137].) No special relationship has been found between police officers and individual members of the community unless by word or deed a police officer has induced reliance by the citizen or increased the citizen's peril. (See *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82]; *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453].) On this record, there is no evidence of a special relationship between Officer Martinez and the Hamiltons. Martinez did nothing which would have either directly or indirectly induced any reliance upon him by the Hamiltons or increased their peril.