James G. PETERSEN, Plaintiff,

v.

Gregory CAZEMIER and Glenn McDonald, Defendant.

No. CIV. 00–1343–TC.

United States District Court, D. Oregon.

July 23, 2001.

Donald D. Dartt, Portland, OR, Spencer M. Neal, Ginsburg & Neal, Portland, OR, for James G. Petersen.

Robert A. Petersen, Dept. of Justice, Trial Div., Salem, OR, for Gregory Cazemier, Glenn McDonald.

1. One is reminded of Cyrano de Bergerac's discourse on the similar failure of an attempt by a provocateur to describe the size of his nose (Excerpted from Act I: The Hall of the Hotel de Bourgogne, 1640)

## ORDER

AIKEN, District Judge.

Magistrate Judge Coffine filed his Findings and Recommendation on July 5, 2001. The matter is now before me. *See* 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). No objections have been timely filed. This relieves me of my obligation to give the factual findings *de novo* review. *Lorin Corp. v. Goto & Co., Ltd.,* 700 F.2d 1202, 1206 (8th Cir.1983). *See also Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983). Having reviewed the legal principles *de novo,* I find no error.

THEREFORE, IT IS HEREBY ORDERED that, I adopt Judge Coffin's Findings and Recommendation.

## FINDINGS AND RECOMMENDATION

COFFIN, United States Magistrate Judge.

Plaintiff has filed a complaint under 42 U.S.C. § 1983, alleging that defendants violated his First Amendment rights to freedom of speech and to petition the government for redress of grievances. Presently before the court is defendants' Motion to Dismiss and Alternative Motion for Summary Judgment (# 9). For the reasons stated below, defendants' motion should be allowed and the action dismissed.

### FACTUAL BACKGROUND

In his opposition to defendants' motion for summary judgment, plaintiff's counsel informs that "[t]his case is about an *avid* hunter whose elk hunt was disturbed by a game officer who wanted to check his license and his tag while he was stalking an elk" (emphasis added). The adjective selected in the above sentence is too meek by far to capture the flavor of the hunter's conduct in this case.[1] At any rate, here is what happened:

THE VISCOUNT:
No one? But wait!
I'll treat him to ... one of my quips! ...
See here! ...

Oregon State Police Senior Trooper Glenn McDonald approached plaintiff James Petersen, a Prineville dentist, for the purpose of checking the latter's hunting license and tag while he was stalking an elk herd in eastern Oregon. The timing of this encounter was less than ideal, as Petersen was in hot pursuit of a large bull elk, biding his time for a clear shot.

McDonald had trouble getting Petersen's attention, so he honked the horn of his state police pickup truck. Unwilling to be distracted from his quarry, Petersen did not stop and continued to track the elk. This led McDonald to get out of his vehicle and approach Petersen on foot, requesting him to stop. At this, plaintiff unleashed a profanity-laced tirade at McDonald.[2] Plaintiff's tirade, however, was only part of the equation confronting McDonald. One does not hunt elk with bare hands, and plaintiff was carrying a loaded rifle, holding it across his body while he vented at the trooper.[3]

Eventually, Petersen leaned his rifle against a tree, produced his license and tag, and McDonald left the area without issuing any citations. Prior to breaking off the encounter, McDonald remarked that plaintiff had displayed unusual hostility, and Petersen denied being hostile because there had been no physical altercation. He then stuck out his wrists, apparently suggesting that McDonald arrest him if he felt otherwise.

Some five days later, Petersen telephoned the Bend office of the state police to obtain a copy of a radio tape that he felt would show that McDonald had spooked the herd by communicating with an OSP airplane (which had flown over the herd while plaintiff was stalking it), to complain about McDonald's actions, and to apologize for his use of profanity.

In that conversation, plaintiff criticized McDonald's conduct in the field and defendant Cazemier's conduct on the telephone; he also expressed doubts about Cazemier's ability to impartially examine plaintiff's criticisms of McDonald. He informed Cazemier that he was considering writing an article about his criticisms of McDonald for publication in a hunting magazine.

(He goes up to Cyrano, who is watching him, and with a conceited air):
 Sir, your nose is ... hmm ... it is ... very big!
CYRANO (gravely):
 Very!
THE VISCOUNT (laughing):
 Ha!
CYRANO (imperturbably):
 Is that all? ...
THE VISCOUNT:
 What do you mean?
CYRANO:
 Ah no! young blade! That was a trifle short! You might have said at least a hundred things! By varying the tone ...like this, suppose, ... Aggressive: 'Sir, if I had such a nose I'd amputate it!' Friendly: 'When you sup It must annoy you, dipping in your cup; You need a drinking-bowl of special shape!' Descriptive: ''Tis a rock! ... a peak! ... a cape!—A cape, forsooth! 'Tis a peninsular!' Curious: 'How serves that oblong capsular? For scissor-sheath? Or pot to hold your ink?' Gracious: 'You love the little birds, I think? I see you've managed with a fond research To find their tiny claws a roomy perch!' Truculent: 'When you smoke your pipe ... suppose That the tobacco-smoke spouts from your nose—Do not the neighbors, as the fumes rise higher, Cry terror-struck: "The chimney is afire"?' Considerate: 'Take care, ... your head bowed low By such a weight ... lest head o'er heels you go!' Tender: 'Pray get a small umbrella made, Lest its bright color in the sun should fade!'

2. Plaintiff admitted in his deposition that he directed profanities at McDonald. The precise terminology used is not that important, and appears to have included a number of "fuck you", "asshole", and "son of a bitch" comments in angry tones.

3. The rifle was not equipped with a sling, a fact cited by plaintiff as the reason he was holding it in the manner described.

Following this conversation, Cazemier contacted Crook County Deputy District Attorney Ronald Brown regarding the incident between plaintiff and McDonald. He also asked Brown how to handle plaintiff's request for a copy of the report about the incident prepared by McDonald for Cazemier. Brown told Cazemier to send a copy of the report and a letter from McDonald describing the events to him (Brown) so that he could examine them to determine if probable cause existed to seek criminal sanctions. He also informed Cazemier that if there was a criminal investigation in progress plaintiff could seek a copy of the letter through the discovery process.

McDonald's report of the incident was accordingly forwarded to the prosecutor. In pertinent part, the report contained the following description of the event:

ACTION TAKEN: On November 14, 1998 I was conducting a Fish and Wildlife patrol in the Rager Ranger District of the Ochoco National Forest, in Crook County. On this particular day, I was performing the various duties and functions associated with the job description of an Oregon State Trooper assigned to the Fish and Wildlife Division. I drove up the 4250 road and encountered several vehicles on the 600–spur road, equipped with VHF radios. The operator of both vehicles stated that they had hunters out and were awaiting them to exit the woods.

I drove on into the 600 road approximately one half mile from the junction of the 600–602 road and parked my vehicle, with the ignition off, at the junction of the 600–410 road. (Note that the 602 road is the road that leads into private owned property and is the deadline for unauthorized vehicles.)

After sitting in this location for approximately fifteen minutes for the purpose of listening for shots and locating hunters in the area, I observed Mr. Petersen to cross the 600 road, approximately 80–100 yards, east of my location.

I started my marked, State Police vehicle and drove to where the defendant had crossed the road and because he exhibited no reaction to my vehicle, I tapped my horn to gain his attention. Mr. Petersen continued to walk south, in the direction of the private property without turning.

I then turned my motor off and exited the vehicle and hailed Mr. Petersen by identifying myself as State Police and requesting him to stop.

At a distance of approximately 50–60 yards, Mr. Petersen stopped, and without completely turning around, yelled "fuck you, you son of a bitch". After yelling, he continued to walk on, in the same direction.

I again addressed Mr. Petersen that I wished to check his license and advised him that I would return with a warrant if he failed to comply.

At this, Mr. Petersen turned completely around and faced me. Mr. Petersen's high-powered, centerfire rifle was held across his thighs, parallel with the ground utilizing both hands, and he yelled at me, "fuck you, you asshole!" At this point in the contact, Mr. Petersen, whom I have never knowingly met before, appeared to be completely out of control. His posture with the rifle, combined with the loud obscenities aimed at me personally, led me to believe that this could lead to a deadly, physical confrontation. I was convinced that this individual, given his demonstrated state of mind, was capable of shooting his weapon at me, and felt very intimidated. I attempted to calm Mr. Petersen by stating that I never knew him and that the reason I was in the area was for enforcement. Mr. Petersen's distraught

mood seemed to be elevated by these attempts and he could not be reasoned with.

Mr. Petersen replied by repeatedly calling me a "fucking asshole" and stating that I had fucked up his hunt by being where I was. He yelled that I had no probable cause to be in on a closed road. After sometime [sic], the distance between Mr. Petersen and myself closed and I continued to try to reason with him. I offered Mr. Petersen my name and told him that I would be glad to write down the information for him to complain if he would come over to my truck with me. I also apologized to him if I had scared off any elk from him. He replied that he would not forget my name and that if I had scared off a bull elk from him, we would be down, rolling in the snow.

I understood this last statement by him to mean that Petersen was capable of physically assaulting me.

Mr. Petersen finally relinquished his license and tag. The subject left, walking in the direction of the private property, still directing obscenities at me.

I departed the area, but felt uncomfortable turning by back on Petersen in the process.

Brown also reviewed a memo to Cazemier from McDonald, which contains much of the same information,[4] and concluded that probable cause existed to charge plaintiff with the offenses of interfering with a police officer and menacing. Defendant Cazemier drafted a citation for each offense, which defendant McDonald signed. After service of the citations, it was discovered that venue was inappropriate in Crook County and the file was transferred to Wheeler County. Upon review of the file and communication with defendant Cazemier, Wheeler County District Attorney Thomas Cutsforth verified the validity of the first two charges and also charged plaintiff with disorderly conduct.

Plaintiff was tried by jury in Wheeler County Circuit Court. Upon conclusion of the evidence, plaintiff (then defendant Petersen) moved for dismissal; his motion was granted as to the disorderly conduct charge. The jury acquitted plaintiff on the remaining charges.

Plaintiff filed a complaint in this court on September 29, 2000. He claims that the actions of defendants McDonald and Cazemier, resulting in the criminal charges against him, were in retaliation for his criticisms of their conduct and violated his First Amendment right to free speech. He further asserts that defendants violated his right to petition the government for redress of his grievances.

Defendants have filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment, on grounds of qualified immunity and failure to state a claim. Because the parties have filed and referred to matters outside the pleadings, and the parties have generally argued the issues under the standards for summary judgment, defendants' motion is treated as such. *See* Fed.R.Civ.P. 12(b).

### STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact.

---

4. McDonald's official report is dated 11/27/98, subsequent to the Petersen–Cazemier phone conversation. His memo is undated, but appears to predate the call, as it concludes with the comment "I thought you might be interested in case he calls. He probably should be charged."

Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of North America,* 638 F.2d 136, 140 (9th Cir.1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a *genuine* issue for trial." Fed. R.Civ.P. 56(e) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## STANDARDS FOR QUALIFIED IMMUNITY

█ A district court can make a pretrial finding that individual governmental agents have qualified immunity from a suit stemming from actions taken in their official capacity if, considering facts and inferences in the light most favorable to the plaintiff, the officials were entitled to qualified immunity as a matter of law. Such agents are entitled to qualified immunity, unless a reasonable officer would have known that the conduct at issue was unlawful under clearly established law. *LaLonde v. County of Riverside,* 204 F.3d 947, 953 (9th Cir.2000). The standard for determining whether an official is entitled to immunity is essentially objective, designed to avoid the "costs of trial" and the "broad-reaching discovery" associated with attempts to prove an individual official's state of mind. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## DISCUSSION

### A. *Plaintiff's retaliation claim.*

█ To make out a cause of action under section 1983, plaintiff must plead that (1) the defendants, acting under color of law, (2) deprived plaintiff of rights secured by the Constitution or federal statutes. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986). There is no dispute that for all relevant occurrences underlying plaintiff's claim, defendants were acting under color of law. Defendants dispute that plaintiff suffered any actual deprivation of his First Amendment rights; however, as recently reiterated by the Ninth Circuit, government officials can violate the First Amendment when their actions "would chill or silence a person of ordinary firmness from future First Amendment activities." *White v. Lee,* 227 F.3d 1214, 1228 (9th Cir.2000) (quotation marks and citation omitted). Assuming the truth of plaintiff's assertions—that defendants provided false information to the District Attorneys to wrongfully prosecute him due to his Constitutionally-protected

criticisms of the defendants—one could easily conclude that such actions would chill a person or ordinary firmness from voicing future criticisms. Hence, at this basic level of evaluation, plaintiff has made out a *prima facie* case under section 1983.

In response to plaintiff's claims, defendants are asserting a right to qualified immunity on the grounds that the activity alleged to create the "chilling"—the criminal prosecution—was instigated by the District Attorneys, who, upon review of defendants' reports, independently found probable cause for prosecution. Defendants assert that the independent judgment of the District Attorneys in finding probable cause serves to cut them off from any liability stemming from the prosecution.

■■ Generally, this proposition is correct. The independent judgment of a prosecutor that probable cause exists to file charges against an individual will insulate a police officer from liability when the officer reasonably relies upon that independent judgment in investigating or citing the individual thereafter. *See Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.1981). In such a case, some courts have even decided that the subjective intent of the officers in submitting reports to the District Attorney need not be examined, because the independent judgment of the prosecutor ultimately determines if a criminal prosecution will occur. *See, e.g., Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2nd Cir.1992). The independence of the prosecutor is called into question, however, when the plaintiff provides evidence that the prosecutor was purposely supplied with false or misleading information on which to make his determination of proba-

ble cause. *Smiddy*, 665 F.2d at 267. In such a case, qualified immunity is inappropriate because a reasonable officer would surely know that such action was unlawful under clearly established law.[5]

To survive defendants' summary judgment motion, plaintiff must provide evidence of the defendants' alleged provision of false or misleading information; mere conclusory statements or recitations of events that differ from defendants' are not sufficient. Thus, the Ninth Circuit, in examining prosecutorial independence, has stated:

> The prosecutors who filed the case against [plaintiff] Sloman, Jay Orr and David Doyle, both submitted affidavits stating that they had exercised independent judgment in filing the case. They admitted, however, that they based their judgment exclusively on the police reports submitted by Officers Hale and Sliester. The district court made a summary judgment finding that Orr and Doyle had exercised independent judgment in deciding to prosecute Sloman.... The court did not expressly consider Sloman's allegations that the police reports on which the prosecutors based their decision to prosecute were fabricated by Officers Hale and Rein, and thus that the prosecutors were incapable of exercising independent judgment.
>
> Sloman did not and does not point to any evidence of such fabrication, other than the fact that the officers' reports were inconsistent with Sloman's own account of the incidents leading to his arrest. Such conclusory allegations, standing alone, are insufficient to pre-

**5.** *See, e.g., Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990): "[W]ell established is the principle that government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows—or should know—that much."

vent summary judgment. In *Barlow* [*v. Ground,* 943 F.2d 1132, 1137 (9th Cir. 1991)] and *Borunda* [*v. Richmond,* 885 F.2d 1384, 1390 (9th Cir.1988)], by way of contrast, the police reports on which the prosecutors relied contained demonstrable omissions, were contradicted by other police reports, and, most importantly, were contradicted by independent witnesses who corroborated the plaintiff's version of events. . . .

We conclude that Sloman has not succeeded in demonstrating that there is a genuine issue of fact with regard to whether the prosecutors exercised independent judgment, and therefore affirm the district court's holding.

*Sloman v. Tadlock,* 21 F.3d 1462, 1474–75 (9th Cir.1994).

■ In this case, plaintiff has provided no evidence that defendants fabricated reports to the prosecutors beyond his own speculation. Although plaintiff does point to items which he considers material omissions [6] and claims that defendant McDonald's report "exaggerated and distorted plaintiff's actions and demeanor" (Plaintiff's Response (# 14) at 7), he does not provide any direct evidence suggesting intentional misconduct by defendants. The omissions in McDonald's cited by plaintiff are insufficient to show an intent to initiate wrongful prosecution. Failing to report the absence of a sling is better characterized as an oversight than a material omission. Plaintiff states that the inclusion of that fact would have shown that plaintiff was not holding his rifle in a threatening way but in the way he had to under the circumstances. However, plaintiff could have (and at one point did) lean his rifle against a tree or otherwise secure it in a less threatening manner than he did. The undisputed fact is that plaintiff was holding a loaded rifle across his thighs during the bulk of the exchange between himself and defendant McDonald, and that is what was reported to the District Attorney. An officer is not held to the standard of a mind-reader and thus required to anticipate an armed individual's hindsight explanation for his actions, nor is he obligated to function as plaintiff's advocate when he prepares his report of the incident. The fact is that Petersen held his loaded rifle in a ready position while he angrily berated McDonald for interrupting his hunt, and McDonald's report was completely accurate in this regard.

Next, plaintiff places heavy emphasis on his assertion that he "gave McDonald an easy opportunity to arrest or, at least, to cite him at the scene on November 14th, at the point at which plaintiff had placed his rifle against a tree and was thus unarmed and held out his wrists to be cuffed". # 14 at 6. That defendant McDonald did not include this in his report is, plaintiff asserts, a material omission that handicapped the prosecutor's probable cause analysis. However, inclusion of the event was irrelevant to the prosecutor's analysis, at least insofar as plaintiff's allegations. Plaintiff believes that defendant McDonald's failure to arrest him at the scene shows that defendant McDonald did not believe there was probable cause to arrest or cite him. But the prosecutor, of course, already knew that defendant McDonald had not arrested or cited plaintiff at the scene. Police officers do not make a determination of probable cause only when

---

**6.** Such as plaintiff's "volunteering" to be arrested by holding out his wrists and the fact that plaintiff's rifle did not have a sling and therefore had to be held or set down. The court notes that these "omissions" could equally be characterized as inconsistencies between plaintiff's and defendant McDonald's stories, and not sufficient to overcome defendants' summary judgment motion under *Sloman.* However, the court will examine the alleged omissions to see if they had undue impact on the prosecutor's judgment.

an individual sticks his wrists out "to be cuffed". The prosecutor undoubtedly knew that defendant McDonald was unsure at the time of the events whether probable cause existed or not; that was the very reason for seeking the prosecutor's judgment. McDonald's failure to include the specific details of plaintiff's allegedly "volunteering" to be arrested is not a material omission and is insufficient to create a material fact as to whether false or misleading information was provided to the prosecutor.

Because plaintiff has not succeeded in demonstrating the existence of a genuine issue of material fact as to the prosecutor's independence in filing charges against him, there is nothing suggesting that defendants' actions were outside the boundaries of the qualified immunity standard. It is reasonable for an officer to refer an occurrence to the district attorney for an evaluation of probable cause. Defendants deserve qualified immunity as to plaintiff's retaliation claim.

Finally, it is not entirely clear whether plaintiff bases his retaliation claim against McDonald independently on the referral of the incident to the district attorney offices because of the content of plaintiff's speech to McDonald at the scene, as opposed to the claim being based on the referral occurring after plaintiff's complaint to Cazemier. If so, it is worth observing that while plaintiff characterizes his profanity-based criticism of McDonald as protected speech, it is also verbal conduct that the officer, the prosecutors, and indeed this court, are entitled to consider as part of the context in gauging whether an armed individual's behavior is "intimidating" or "menacing." Plaintiff's pejorative language cannot be isolated as protected

speech and thus removed as an ingredient from the stew he presented McDonald. The flavor of Petersen's manner of holding the rifle was critically affected by his angry demeanor and words. What otherwise would have been a routine license and tag check by a game warden was transformed into a tense situation by Petersen's reaction such that any reasonable officer in McDonald's position would have had an objective basis to be concerned for his safety.

**B.** *Plaintiff's right to petition claim.*

 In addition to his claim that defendants' unlawfully retaliated against him and attempted to chill his right to speak, plaintiff asserts that defendants violated his right to petition the government for a redress of his grievances. Plaintiff accurately notes that this First Amendment right extends beyond simply access to the courts. *See Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.1995). However, it does not mean that every petition for redress of grievances must be successful. Plaintiff asserts that when he complained to defendant Cazemier about defendant McDonald's conduct, it was a petition to redress his grievances and his right to do so was denied. Assuming, *arguendo,* that such communication falls within the scope of the First Amendment right to petition clause, plaintiff provides no evidence that defendant Cazemier did not give his complaint adequate consideration. Plaintiff is not guaranteed redress, simply the right to seek it. He complained to defendant Cazemier and, barring evidence that suggests that defendant Cazemier arbitrarily discounted his complaints, his right to seek administrative relief via his chosen route has not been violated.[7] Moreover, while

---

7. Plaintiff's variation on the claim—that the complaints he made to defendant Cazemier about defendant McDonald resulted in defendants pursuing criminal charges against

him—is really another retaliation claim, and, as discussed above, defendants are entitled to qualified immunity on that issue.

plaintiff is obviously unhappy with the decisions made by the prosecutors who reviewed his case, plaintiff's "petition" might conceivably have produced a prosecutorial rebuke of McDonald had the district attorneys found the trooper's conduct unprofessional. That the prosecutors came to the opposite conclusion does not demonstrate that there was not an independent review of McDonald's actions as well.

Plaintiff does not assert that he was denied access to other routes for relief, such as through formal administrative procedures or legal action. Plaintiff has not shown the existence of a genuine issue of material fact that would allow a reasonable jury to decide that his right to petition the government for a redress of grievances was denied. As such, summary judgment in favor of defendants is appropriate.

## CONCLUSION

While it is unfortunate that plaintiff's hunt was interrupted by a game warden, the officer was merely carrying out his duty in checking that plaintiff was properly licensed and possessed an elk tag. Plaintiff's angry reaction, coupled with his manner of holding a loaded rifle, created a colorable and objectively reasonable basis to believe that plaintiff's behavior was "menacing" or "intimidating" to defendant McDonald. Plaintiff's subsequent complaints about McDonald to Sergeant Cazemier, McDonald's supervisor, did not bar Cazemier or McDonald from seeking an independent prosecutorial review of the case from the district attorney. Neither Cazemier nor McDonald furnished any material false information to the prosecutors, or omitted any material information in their reports. The prosecutors' independent review entitles the defendants to qualified immunity on plaintiff's retaliation claim. In addition, plaintiff's claim for a denial of his right to petition should be dismissed for failure to state a claim. Defendant's motion for summary judgment

(# 9) should be granted and this action should be dismissed.

July 5, 2001.