Filed 5/19/23  Pickens v. County of Riverside CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| TAMARIA PICKENS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF RIVERSIDE et al.,<br><br>    Defendants and Respondents. | D080922<br><br><br><br>(Super. Ct. No. RIC1901399) |

APPEAL from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge.  Affirmed.

Mahoney & Soll, Paul M. Mahoney and Ryan P. Mahoney for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell, Melinda Lee Cantrall and Natalie Luongo for Defendants and Respondents.

Plaintiff and appellant Tamaria Pickens appeals a summary judgment and demurrer entered in favor of respondents County of Riverside (County), City of Moreno Valley, and Riverside County Sheriff Sergeant Edwin Baeza on Pickens's complaint for damages arising from her primary claim of false arrest and imprisonment.

The trial court sustained without leave to amend the demurrer on her causes of action for intentional and negligent infliction of emotional distress in the operative second amended complaint, concluding all respondents were immune under Government Code section 821.6. It overruled the demurrer on the false arrest and imprisonment cause of action as to all defendants. As to Sergeant Baeza, it overruled the demurrer on the claim of violation of civil rights (42 U.S.C. § 1983 (section 1983)); but it sustained it as against the public entity defendants, granting Pickens leave to amend. Pickens did not amend her complaint.

The court granted Sergeant Baeza's summary judgment motion on the section 1983 cause of action, and granted it as to all respondents on the false arrest and imprisonment cause of action.

Pickens contends the court erroneously: (1) ruled on respondents' evidentiary objections in the summary judgment proceedings; (2) granted summary judgment on all causes of action because respondents lacked probable cause to arrest her, as a reasonable officer cannot rely on illegally obtained statements to create probable cause and the arrest warrant did not establish probable cause; (3) sustained the demurrer as to the public entity defendants on the section 1983 cause of action; (4) ruled Sergeant Baeza was entitled to qualified immunity; and (5) sustained the demurrer as to the causes of action for intentional and negligent infliction of emotional distress. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In reviewing the court's ruling on a summary judgment, we state the undisputed facts and other facts in the light most favorable to Pickens as the opposing party, resolving evidentiary doubts and ambiguities in her favor. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

2

The undisputed facts in the summary judgment papers show that in May 2017, B.P. reported to the Riverside County Sheriff's Department that her six-year-old daughter, D.A., said that Pickens touched her private area on two occasions while they were living in Pickens's home in 2017.

Sergeant Baeza, who was employed by County and an investigator with the City of Moreno Valley police station, investigated the allegations.

Sergeant Baeza arranged for a forensic interview of D.A. with a children's social worker. During the video-recorded interview, which Sergeant Baeza observed from another room, D.A. said that Pickens, whom she called "granny," had touched her vagina on two occasions.

Sergeant Baeza did not order a physical examination of D.A., reasoning it was intrusive and unlikely to yield any evidence due to the passage of time.

Based on D.A.'s forensic interview, Sergeant Baeza arranged for B.P. to make a pretext call to Pickens. During the call, Pickens initially denied touching D.A., saying D.A. bathed herself at Pickens's house. However, after B.P. suggested that maybe Pickens had accidentally touched D.A.'s private parts while applying lotion to her after helping her bathe, Pickens changed her story and said she had helped D.A. put on her clothing, and showed her how to apply lotion. Pickens told B.P. this was a "family situation," which they should handle themselves and not report to Child Protective Services.

Sergeant Baeza and another officer interviewed B.P., who was consistent in her statements and showed concern for her child.

In May 2017, Sergeant Baeza asked Pickens to come to the police station voluntarily, and she did so. Sergeant Baeza told her she would return home that night and, "[i]f at any point you feel uncomfortable, all you have to do is get up, and I'll follow you and escort you to the front." Pickens stated she wanted to proceed with the interview. It lasted less than one hour.

3

Although Pickens suggested that D.A. was lying, she could think of no reason D.A. did that. Sergeant Baeza was polite to Pickens and did not raise his voice at her. She was not concerned about being arrested. Pickens understood that Sergeant Baeza needed to investigate the allegations as part of his job. Sergeant Baeza asked Pickens if she would like to take a polygraph test, and she agreed. The certified polygrapher asked Pickens whether she had touched D.A.'s vagina. Her negative response to that question elicited a notification stating, "deception indicated."

Sergeant Baeza and his partner conducted a post-polygraph interview of Pickens, which was audio-recorded. Pickens was advised of her rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) at the start of this interview.[1]

Pickens testified in a deposition that she told Sergeant Baeza in the post-polygraph interview that she had probably touched D.A.'s vagina with skin-to-skin contact on at least two occasions. Pickens claims Sergeant Baeza asked her if she would write an apology letter, and she "went along" with his request.

Sergeant Baeza prepared and submitted a probable cause statement to the Riverside County District Attorney's office. In May 2017, Pickens was detained for two days and released. After Sergeant Baeza resubmitted the file to the district attorney around the end of June 2017, he stopped investigating this case.

---

[1] Pickens purports to dispute this claim by asserting she "did not understand '*Miranda* Rights' and was scared and following Sergeant Baeza's orders because of his status as a police officer and because she no longer had her vehicle." (Italics added.) We conclude Pickens's clarification does not create a material dispute of fact.

4

The District Attorney pressed charges against Pickens, and the court approved an arrest warrant. In September 2017, she was arrested a second time.

Pickens in discovery produced a police report stating that in August 2018, the Oceanside Police Department investigated a separate incident in which B.P. claimed that a family member had sexually abused D.A. The police concluded the allegations were not credible.

In October 2018, the Riverside District Attorney reportedly dismissed the charges against Pickens based on the Oceanside Police Department's investigation, and she was released from detention.

In November 2018, Pickens filed a government claim against the City of Moreno Valley. That same month, she filed a government claim against County.[2]

---

[2] Respondents in their separate statement of material facts stated Pickens's claim was untimely under the Government Claims Act. Pickens disputed that, asserting the claim was timely as she "was released from an unlawful incarceration and was suffering from the effects of the Defendant's [*sic*] tortious conduct. As a result, there is a triable issue as to when her action began tolling. [She] had been in jail and was suffering from a nervous breakdown therefore defendants cannot benefit from a statutory deadline when they were complicit in the incarceration and elapse of time. Moreover, equitable considerations cannot be barred by the [d]efendant [*sic*] as a matter of law."

The court did not expressly rule that Pickens's claim was time-barred, but by relying on the immunity provision of the Government Claims Act, it impliedly concluded Pickens's claim was timely. In any event, Pickens has not meaningfully challenged the court's implied ruling on appeal. She merely asserts with no citation to the record or case law: "[She] was held without her consent by respondents for one year. Once she was released in late 2018 and the charges were dismissed, she filed her claim. It was timely filed in November of 2018."

In her operative complaint, Pickens alleged claims for: (1) violation of section 1983; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) false arrest and false imprisonment.

Pickens alleged as to all causes of action: "[Sergeant] Baeza violated [her] constitutional rights in a number of ways. First, he conducted illegal warrantless surveillance of [her] in violation of [her] 4th Amendment right to be free from an unreasonable search. [Her] 1st Amendment privacy rights are also implicated by [Sergeant] Baeza's conduct . . . . [He] also subjected [her] to a coercive interrogation in violation of her 5th Amendment rights. [She] was denied the assistance of counsel throughout [Sergeant] Baeza's interrogation. Finally, [his] arrest of [her] was made without probable cause and in violation of her 4th Amendment right to be free from an unreasonable seizure. [Sergeant] Baeza lacked probable cause because, as described previously, he knew prior to [her] arrest that [B.P.] was a sick liar who previously lied about child molestation and therefore could not be trusted with respect to her allegations. He also knew that [B.P.'s] allegations were uncorroborated by any other source. . . . As a direct result of [Sergeant] Baeza's conduct, Pickens lost her job, was separated from her family, and suffered a nervous breakdown in prison." Pickens incorporated the above allegations by reference to all causes of action.

Pickens further alleged a claim under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 (*Monell*). Under *Monell,* government officials sued in their official capacity cannot be held liable under section

On appeal, respondents maintain that Pickens's state law claims are untimely. However, even if we interpret this issue in Pickens's favor and assume without deciding that her claim was timely presented, we resolve this appeal on other grounds.

1983 under a respondeat superior or vicarious liability theory. (*Id.* at p. 691.) Rather, liability must be based on an official policy that was the moving force behind the constitutional violation. (*Id.* at p. 694.) Pickens alleged her "injuries were directly caused by the official policies, customs, and practices of County of Riverside and the City of Moreno Valley . . . [which] treat allegations of child molestation and sexual assault differently from other crimes." She further alleged that when Sergeant Baeza investigated and arrested her, he and others were aware of these official policies. She alleged on information and belief that it is the official policy of County to provide no training to those who are directed and employed to investigate child molestation. Pickens also alleged County failed to promulgate proper and or adequate rules, regulations, policies and procedures for training and supervising officers and agents of the Riverside County Sheriff's Department and County with respect to the conduct of interrogations and techniques for questioning criminal suspects and witnesses.

Defendants demurred to the complaint, and the court sustained the demurrer on the causes of action for intentional and negligent infliction of emotional distress without leave to amend, concluding respondents enjoyed immunity under Government Code section 821.6. It sustained the demurrer on the section 1983 cause of action as to the public entity defendants with leave to amend; however, Pickens did not amend. It overruled the demurrer as to Sergeant Baeza on the section 1983 cause of action. The court overruled the demurrer on the false arrest and imprisonment cause of action as to all defendants.

Defendants moved for summary judgment on the section 1983 claim against Sergeant Baeza, and the false arrest and imprisonment claim against all defendants. They argued Sergeant Baeza had probable cause to arrest

7

Pickens, who could not establish a violation of her Fourth Amendment rights. They also contended Sergeant Baeza was entitled to qualified immunity as a matter of law. They claimed as to the Fifth Amendment claim that Sergeant Baeza conducted a proper voluntary interview of Pickens. They further argued as to the false arrest and imprisonment cause of action that Pickens failed to comply with the six-month statute of limitations for presenting a claim under the Government Code section 911.2; therefore, her state law claims were barred as a matter of law. Defendants also argued the City of Moreno Valley was not a proper defendant because its police station was operated by the Riverside County Sheriff's Department. In support of their motion, defendants filed their separate statement of undisputed material facts and other supporting documents.[3]

Pickens in opposition submitted her declaration and declarations of her husband, Frank Taylor, and an expert, David Martinez, a former law enforcement officer.

Defendants in reply objected to parts of the declarations Pickens submitted.

The court granted defendants' summary judgment motion, finding no triable issue of fact existed and they were entitled to judgment as a matter of law. It concluded regarding the section 1983 cause of action that probable cause existed to arrest Pickens: "[Sergeant] Baeza testified that he did investigate [Pickens's] statements that [B.P.] had made prior false accusations, but had no reason to not believe the victim in light of [Pickens's]

---

[3] Defendants filed a separate volume of evidence; an application to file under seal certain exhibits attached to their separate volume of evidence; certain exhibits filed under seal; declarations of Sergeant Baeza and Natalie Luongo, Esq.; and a request for judicial notice of Pickens's Government Claims Act filings.

inconsistent statements. . . . Here, the victim's statements along with [Pickens's] statements were sufficient to constitute probable cause. (This is particularly so when [Pickens] admitted at deposition that she did not make any involuntary statements to the officers.)" The court added: "Under [ ] Penal Code section 847, [subdivision] (b), there is no liability for false arrest or false imprisonment if the arrest was lawful or if the officer had reasonable cause to believe the arrest was lawful, which echoes the Fourth Amendment issue presented by the [section 1983] cause of action." (Italics omitted.) The court stated Pickens failed to demonstrate that a medical exam of D.A. was necessary to establish probable cause to arrest Pickens. The court found that, even assuming the police did not give Pickens *Miranda* warnings before Sergeant Baeza's interview, that failure could not be the basis of a section 1983 claim.

The court sustained several of defendants' objections to specific statements contained in the declarations of Pickens, Taylor and Martinez. It found that "the parties agree [Pickens] cannot maintain her cause of action against the City of Moreno Valley in any event—the police station was operated by the Riverside County Sheriff's Office and [Sergeant] Baeza was employed by that agency."[4]

## DISCUSSION
### I. *Challenge to Evidentiary Rulings*

We begin with Pickens's challenge to the court's evidentiary rulings because on review of a summary judgment, we normally disregard all properly excluded evidence. (Code Civ. Proc., § 437c, subd. (c); *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

---

[4] Pickens does not challenge this finding on appeal.

9

Pickens contends she "never received from the court the evidentiary rulings" despite requesting them twice. She adds she "is well aware of all the COVID excuses, but the bottom line [is] a poor Black respondent was abused by the court system. It was only through a lot of yelling and screaming by [her] counsel that the objections were ultimately received." (Emphasis omitted.) On the substance of Pickens's claim regarding the statements in the declarations, she argues with no citation to the record: "The objections that were sustained were wrong. Martinez has more experience than any police officer involved in this case. He stated very clearly what needs to be shown in this kind of a case. He has substantial training in these types of cases. He found no physical evidence and no probable cause." She adds: "The same is true with regard to the rest of the declaration[s] for appellant which includes the declaration of appellant and her husband Frank Taylor. These court's rulings [*sic*] as to these declarations were not sent to [her] counsel."

Pickens has forfeited any challenge to the trial court's ruling on the evidentiary objections by failing to cite any authority for her argument. An appellant must provide an argument and legal authority to support her contentions. "This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Moreover, Pickens fails to point to any specific excluded statement in the

10

declarations to support her claim the trial court erred in making its evidentiary rulings.

## II. *Probable Cause to Arrest Pickens*

Pickens contends the court erroneously granted summary judgment on the section 1983 cause of action as to Sergeant Baeza and the false arrest and imprisonment claim as to all defendants because triable issues of fact exist regarding whether Sergeant Baeza had probable cause to arrest her. She argues she told Sergeant Baeza in the first interview that B.P was lying about the allegations against her, and B.P. had similarly fabricated accusations against D.A.'s father. Pickens further contends a reasonable officer cannot rely on statements obtained in violation of *Miranda* to create probable cause. Pickens specifically contends the "alleged 'inconsistent statements' elicited by [Sergeant] Baeza were not in fact voluntary but were a direct result of an illegal custodial interrogation." Pickens contends Sergeant Baeza "lacked enough evidence to arrest [her] following his interview of the alleged victim. . . . Nor did he have probable cause after the pretext call and [Pickens's] voluntary interview."

Pickens contends the issuance of an arrest warrant did not establish probable cause as a matter of law, as Sergeant Baeza omitted material exculpatory information from his warrant declaration; specifically, that B.P. "has a history of making false allegations of child molestation"; and "the factual circumstances of the polygraph." Pickens explains Sergeant Baeza omitted "the fact that [he] misled [her] about the location of the polygraph, made her ride in the backseat of a police vehicle to San Bernadino, made [her] wait several hours before taking the polygraph, and isolated her from her boyfriend who wanted to provide moral support."

### A. *Summary Judgment Legal Principles and Standard of Review*

11

Summary judgment is proper only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Flores v. City of San Diego* (2022) 83 Cal.App.5th 360, 371.) A defendant moving for summary judgment has the burden of producing evidence to show a cause of action lacks merit because the plaintiff either cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; see *Regents*, at p. 618; *Flores*, at p. 371.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact with respect to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Flores*, at p. 371.)

We review the entire record and the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. (*Hampton v. County of San Diego, supra,* 62 Cal.4th at p. 347; *Andrews v. Metropolitan Transit System* (2022) 74 Cal.App.5th 597, 603.) We examine the facts presented to the trial court and determine their effect as a matter of law. (*Regents of University of California v. Superior Court, supra*, 4 Cal.5th at p. 618; *Andrews*, at p. 603.) " ' "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton,* at p. 347; accord, *Regents*, at p. 618; *Andrews*, at pp. 603-604.) "[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Reid v. Google, supra*, 50 Cal.4th at pp. 534-535.)

"When the seizure of a person amounts to an arrest, it must be supported by an arrest warrant or by probable cause." (*People v. Celis* (2004) 33 Cal.4th 667, 673.) "Probable cause is shown 'when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime.' " (*People v. Zaragoza* (2016) 1 Cal.5th 21, 57.) " '[T]here is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances.' " (*Celis, supra,* at pp. 674-675.)

The existence of probable cause for an arrest presents a question of law we review using our independent judgment. (*People v. Thompson* (2006) 38 Cal.4th 811, 818.) Since the operative facts regarding probable cause here are undisputed, our entire review is de novo. (*Ibid.*) The concept of probable cause has been described as "incapable of precise definition." (*People v. Celis, supra,* 33 Cal.4th at p. 673.) That is intentionally so, because "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts." (*Illinois v. Gates* (1983) 462 U.S. 213, 232.) "Probable cause exists when the facts known to the arresting officer would persuade someone of 'reasonable caution' that the person to be arrested has committed a crime." (*Celis,* at p 673.) The substance of the definition of probable cause is " ' "a reasonable ground for belief of guilt." ' " (*Ibid.,* citing *Maryland v. Pringle* (2003) 540 U.S. 366, 371.)

Once probable cause to arrest someone is established, an officer is under no duty to investigate further or look for additional evidence which may exculpate the accused. (*Broam v. Bogan* (9th Cir. 2003) 320 F.3d 1023,

13

1032.) In addition, exculpatory omissions are not material where, after amending the warrant to omit the alleged misrepresentations, probable cause still exists. (*Beltran v. Santa Clara County* (9th Cir. 2010) 389 Fed.Appx. 679, 681.)

A failed polygraph examination may support probable cause for an arrest. (*Reed v. City of Chino* (9th Cir. 2007) 224 Fed.Appx. 625, 626 [summary judgment properly granted in favor of defendant on plaintiff's section 1983 claim, as there was probable cause to arrest plaintiff for arson, including the fact that the plaintiff had been deceptive when asked during a polygraph examination about his involvement in the fire]; *U.S. v. Wong* (9th Cir. 2003) 334 F.3d 831, 836 [probable cause supported warrant where suspect withheld information from the police and appeared deceptive during a polygraph test].)

B. *Analysis*

We conclude the court did not err in finding that probable cause existed to arrest Pickens. The undisputed evidence is that B.P. informed law enforcement Pickens had inappropriately touched D.A. In a separate forensic interview, D.A. recounted the same information. During the pretext call, Pickens initially denied bathing or dressing D.A. However, she later changed her story and conceded she may have touched D.A.'s vagina by accident while applying lotion after helping to bathe D.A. During the polygraph examination, Pickens's response regarding the inappropriate touching returned a response of "deception indicated." After she received the *Miranda* warnings, Pickens admitted to touching D.A.'s bare vagina. She also wrote an apology letter regarding the touching.

"Information provided by a crime victim or chance witness alone can establish probable cause if the information is sufficiently specific to cause a

14

reasonable person to believe that a crime was committed and that the named suspect was the perpetrator." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1045.) Although Pickens argues Sergeant Baeza omitted from his arrest warrant petition that he knew B.P. had falsely accused D.A.'s father of inappropriate contact with the child, "neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." (*People v. Ramey* (1976) 16 Cal.3d 263, 269.)

To the extent Pickens relies on her complaint's allegation of a constitutional violation of the right against self-incrimination under the Fifth Amendment of the federal Constitution and the prophylactic rule set forth in *Miranda*, the United States Supreme Court has stated that the failure to provide a *Miranda* warning "cannot be grounds for a [section] 1983 action." (*Chavez v. Martinez* (2003) 538 U.S. 760, 772.)

Having concluded there was probable cause to support Pickens's arrest, we also conclude Sergeant Baeza was entitled to state law statutory immunity with respect to the state law false arrest and imprisonment claim under Penal Code section 847, subdivision (b)(1). That statute provides in part: "There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer or federal criminal investigator or law enforcement officer described in subdivision (a) or (d) of Section 830.8, acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances: . . . The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful."

15

As this court stated in *Hamilton v. City of San Diego* (1990) 217 Cal.App.3d 838, "by their terms Penal Code sections 847 and 836 relieve peace officers of liability so long as reasonable cause for arrest has been established.  No other condition is placed upon the statutory immunity." (*Id.* at p. 845; accord, *Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766, 786 ["California Courts speak of 'reasonable cause' and 'probable cause' interchangeably . . . .  The statutory scheme of which Penal Code section 847 is a part . . . uses both terms without differentiation."].)

Based on the above, we reject Pickens's claim Sergeant Baeza was not entitled to qualified immunity under Penal Code section 847.  Pickens argues, "The second amended complaint specifically alleges that [Sergeant Baeza] did not have reasonable cause to arrest.  . . .  The respondents offer no authority to support the argument that a police officer who engages in the deliberate misconduct is entitled to qualified immunity with respect to false arrest."  As stated, there was sufficient probable cause to arrest Pickens; therefore, the premise of Pickens's argument fails.

To the extent Pickens relies on her complaint's allegation of a violation of her First Amendment right to privacy, she has not presented any argument regarding this issue on appeal, and we conclude there is no triable issue of material fact regarding this claim, and the defendants are entitled to summary adjudication of it.

### III.  *Demurrer on the Section 1983 Claim*

Pickens contends the court improperly sustained the demurrer to the section 1983 cause of action as to the public entity defendants under *Monell, supra,* 436 U.S. 658, 690, which holds that a local government agency may

only be liable for constitutional violations under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." (*Monell, supra*, 436 U.S. at p. 694.)

Pickens further contends: "[T]he second amended complaint lays out how County of Riverside deployed an official and illegal policy with respect to the investigation of child molestation and that [ ] Sergeant Baeza followed that policy in his treatment of [her]. The demurrer should have been overruled on these allegations alone since a facially plausible second amended complaint need only be supported by sufficient factual matter and not detailed allegations. [Citation.] However, . . . the second amended complaint further describe[s] in detail how the County of Riverside, and not just [ ] Sergeant Baeza, knowingly deployed unconstitutional investigatory methods on innocent people in Moreno Valley. Constitutional violations could occur not only by employing coercive interview techniques known to yield false evidence, but also by deliberately mischaracterizing witness statements and falsely claiming to have interviewed witnesses." (Some capitalization omitted.)

Pickens relies on this allegation in the complaint: "The official policy, as promulgated by and through memorandums from County of Riverside and its law enforcement agencies, was the moving force behind Pickens's arrest and subsequent injuries. Moreover, County of Riverside and the City of Moreno Valley acted with deliberate indifference to the constitutional rights of [Pickens] and every other resident of County of Riverside, by directing that its officers pursue a blatantly unconstitutional policy regarding child molestation." (Some capitalization and emphasis omitted.)

17

Pickens contends County may also be liable for her injuries under section 1983 for its failure to train its employees, pointing to this allegation in her complaint: "Appellant is informed and believes that it is the official policy of County of Riverside to provide no training to those who are directed and employed to investigate child molestation. County of Riverside, as an official policy and as demonstrated through various interagency agreements between County of Riverside and the City of Moreno Valley, employed individuals who have literally no training in how to investigate allegations of child molestation." (Some capitalization and emphasis omitted.)

A. *Demurrer Standard of Review and Applicable Law*

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; see also *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.)

" 'If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory . . . ." ' " (*Zhang v. Superior Court*, *supra*, 57 Cal.4th at p. 370, see also *id*. at p. 383.)

It is Pickens's burden to show in what manner she can amend the complaint and how that amendment will change the legal effect of the pleading. (See *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.) Such a showing may be made for the first time on appeal. (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 144-145.) But when a demurrer to an original complaint has been sustained without leave to amend, the question becomes whether the complaint shows on its face that it is incapable of amendment. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["[L]eave to amend is properly granted where resolution of . . . legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations"].)

California courts recognize that federal law applies to determine the sufficiency of a complaint alleging a federal civil rights cause of action under section 1983. (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1471; *Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 563.)

The basic principles of federal law for pleading a cause of action are similar to California's. Rule 8(a) of the Federal Rules of Civil Procedure provides that a pleading must contain a "short and plain statement of the claim showing the pleader is entitled to relief" and a "demand for the relief sought." A motion to dismiss may assert a "failure to state a claim upon which relief can be granted." (Fed. Rules Civ.Proc., rule 12(b)(6).) A complaint meets federal standards if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570.) This facial plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678 (*Iqbal*).)

19

Determining whether a claim is plausible is a context-specific task requiring the court to draw on its judicial experience and common sense. (*Id.* at p. 679.)

A local government agency may only be liable for constitutional violations under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." (*Monell, supra*, 436 U.S. at p. 694; accord, *Pierce v. San Mateo County Sheriff's Dept.* (2014) 232 Cal.App.4th 995, 1007; *Perry v. County of Fresno* (2013) 215 Cal.App.4th 94, 105.) To establish liability under *Monell*, "[t]he plaintiff must establish that (1) the plaintiff was deprived of a constitutional right; (2) the government entity had a policy [or custom]; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation." (*Perry*, at pp. 105-106.)

Claims against government employees sued in their official capacity are treated as claims against the employing agency and are subject to the *Monell* requirements. (*Kentucky v. Graham* (1985) 473 U.S. 159, 166 ["As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"]; *Payne v. McDermott* (9th Cir. 2017) 683 Fed.Appx. 643, 645 [applying *Monell* to section 1983 claim against sheriff's deputies who confiscated sexually explicit comic book in jail on basis "suit against a government employee in his official capacity is a suit against the government entity the individual represents"].)

The federal courts have applied the pleading requirements of *Iqbal, supra*, 556 U.S. at page 678 (requiring more than conclusory allegations) to

*Monell* claims. (See *Galindo v. City of San Mateo* (N.D.Cal., Dec. 7, 2016, No. 16-cv-03651-EMC) 2016 WL 7116927, *5 ["*Monell* allegations must be pleaded with specificity as required under *Twombly* and *Iqbal*"]; accord, *Bedford v. City of Hayward* (N.D.Cal., Oct. 15, 2012, No. 3:12-cv-00294-JCS) 2012 WL 4901434, *12 ["to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits' "].)

B. *Analysis*

Pickens's conclusory and argumentative allegations do not meet the *Iqbal* pleading standard as they do not set forth a specific policy that bears on her claim the public entity defendants had a policy or custom that deprived her of a constitutional right and amounted to a deliberate indifference to that right (see *Perry v. County of Fresno, supra,* 215 Cal.App.4th at p. 105), or any policy showing they failed to train their officers. Further, she does not state what facts she could allege to support a widespread failure to train amounting to deliberate indifference or other policy or custom supporting her *Monell* claim. Pickens's allegations also do not satisfy California pleading standards: "An appellate court's ' "only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action." ' [Citations.] The reviewing court assumes the truth of allegations in the complaint which have been properly pleaded and gives it a reasonable interpretation by reading it as a whole and with all its parts in their context. [Citations.] However, the assumption of truth does not apply to contentions, deductions, or conclusions of law and fact." (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.) Pickens's allegations are argumentative conclusions of law and fact that we do not treat as true.

21

In any event, if a plaintiff did not suffer an underlying constitutional deprivation by a deputy or officer of a government entity, the plaintiff's *Monell* claim automatically fails. In *City of Los Angeles v. Heller* (1986) 475 U.S. 796, 799, the United States Supreme Court held that if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the unconstitutional conduct is "quite beside the point." (Accord, *Rivera v. Rhode Island* (1st Cir. 2005) 402 F.3d 27, 39 [as plaintiff failed to establish a constitutional violation, the City of Canton's failure to train claim likewise failed]; and *Reed v. City of Chino, supra,* 224 Fed.Appx. at p. 625, fn. 1 [because the officer had probable cause for plaintiff's arrest, it was unnecessary for the court to address the potential liability of the public entity].) Here, as we have concluded probable cause existed to arrest Pickens, she suffered no constitutional injury by the public entity defendants. The court did not err in sustaining the demurrer on the section 1983 cause of action as to the public entity defendants.

IV. *Demurrer on Emotional Distress Claims*

Pickens contends the court erroneously sustained the demurrer as to the causes of action for intentional and negligent infliction of emotional distress, as Sergeant Baeza's conduct was extreme and outrageous. She adds Sergeant Baeza "is not protected by Government Code Section 821.6." (Italics omitted.)

"[B]ecause 'all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Thus, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be

pleaded with particularity." ' " (*City of Los Angeles v. Superior Ct.* (2021) 62 Cal.App.5th 129, 138.)

A cause of action for intentional infliction of emotional distress requires: 1) extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) severe or extreme emotional distress; and 3) actual and proximate causation of the emotional distress by the outrageous conduct.  (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486.)  Conduct is considered outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Ibid.*)  The defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.)  With respect to the requirement that the plaintiff show severe emotional distress, the California Supreme Court has set a high bar:  " 'Severe emotional distress means " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' " (*Id.* at p. 1151.)

We conclude Pickens has not alleged facts to show that Sergeant Baeza's conduct was extreme and outrageous.  The allegations in the operative complaint that  Sergeant Baeza did not properly or completely investigate the allegations against Pickens, or that in deciding to arrest her he prioritized certain information over other information showing that B.P. was lying, fall far short of conduct that is so "outrageous" that it " ' "exceed[s] all bounds of that usually tolerated in a civilized community." ' " (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.)  Besides, we have concluded based on the same allegations that Sergeant Baeza's had probable

cause to arrest Pickens.  Accordingly, the court did not err in sustaining the demurrer as to the emotional distress causes of action.

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.